Holly LYONS; Glenn Lyons; Chad Lyons, Chelsie Lyons and Jordon Lyons, Minors, by their Parents and Next Friends, Holly Lyons and Glenn Lyons, Plaintiffs,

v.

Arlan Lee ANDERSEN and Franklin Dale Bode dba Bode Trucking, Defendants.

No. C99–3093–PAZ.

United States District Court, N.D. Iowa, Central Division.

Dec. 1, 2000.

Guy R. Cook of Grefe & Sidney, Des Moines, IA, Paul R. Doster of Fenchel & Doster, Algona, IA, for Plaintiffs.

R. Jeffrey Lewis, Kimberly Knoshaug of Lewis, Webster, Johnson, VanWinkle & Devolder, Des Moines, IA, for Defendants.

## ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

ZOSS, United States Magistrate Judge.

### I. INTRODUCTION

On a snowy night in November 1997, two vehicles traveling in opposite directions collided on a slippery road in rural Humboldt County, Iowa. At the time of the collision, one of the vehicles, an ambulance, was being driven by the plaintiff Holly Lyons ("Lyons"). The other vehicle, a semi tractor-trailer, was being driven by the defendant Arlan Lee Andersen ("Andersen"). Lyons alleges the collision resulted from Andersen's negligence, and claims she was seriously injured in the collision.

The plaintiffs commenced this action on November 10, 1999, by filing a petition in Humboldt County, Iowa, district court. The defendants removed the case to this court on December 6, 1999, based on diversity jurisdiction under 28 U.S.C. § 1332. (See Doc. No. 1) On April 4, 2000, the parties consented to jurisdiction over this case by a United States Magistrate Judge (Doc. No. 9), and on April 5, 2000, the Honorable Mark W. Bennett signed an order transferring the case to Magistrate Judge Paul A. Zoss (Doc. No. 10).

The case is now before the court on the defendants' combined motion for summary judgment and to exclude evidence under Federal Rule of Evidence 104(a), filed on October 27, 2000 (Doc. No. 27). The combined motion was resisted by the plaintiffs on November 9, 2000 (Doc. No. 34). The defendants filed a reply on November 16, 2000 (Doc. No. 58). The parties have filed the appropriate briefs and other papers supporting their respective positions on the motion (Doc. Nos. 28, 29, and 35), and on November 27, 2000, the court heard oral arguments on the motion. The court now deems the motion to be fully submitted.

## II. STATEMENT OF FACTS

Just after midnight on November 14, 1997, Lyons was driving a 1991 Ford Life Ambulance southbound on Highway 169 in Humboldt County, Iowa. At the same time, Andersen was driving a 1985 Freightliner semi tractor-trailer northbound on Highway 169. The road was covered with snow and ice.

At about 12:03 a.m., the ambulance and Andersen's trailer collided near the center of the highway. The left front of the ambulance collided with the left rear of the trailer. The plaintiffs allege the trailer veered into Lyons's lane of travel, resulting in the collision. The defendants allege Andersen's tractor and trailer remained in his lane of travel, and therefore they claim Lyons must have crossed the center of the highway and into Andersen's lane of travel, resulting in the collision.

At the time of the collision, Shelly Ann Watnem ("Watnem") was a passenger in the ambulance being driven by Lyons. Lyons and Watnem were traveling to the scene of a bus accident in the course of their employment as emergency medical technicians. Andersen was operating his semi tractor under a continuous lease to the defendant Franklin Dale Bode ("Bode"). The trailer attached to Ander-

sen's semi tractor was owned by Bode and was being hauled by Andersen under the lease. Displayed on Andersen's semi tractor was a placard with the words "Bode Trucking, Courtland, Mn," along with Bode's ICC and DOT numbers.

On May 10, 1999, Watnem filed an action against Andersen in this court alleging she was injured in the collision as a result of Andersen's negligence. *See Watnem v. Andersen,*[1] No. C99–3038–PAZ (N.D.Iowa), Doc. No. 6. On March 20, 1999, Andersen moved to consolidate the present case with the Watnem case. The motion was not resisted by the Lyons plaintiffs, but was resisted by Watnem. *See Watnem,* Doc. Nos. 21 and 22. The court denied the motion, ruling as follows:

> The court has broad discretion under Rule 42(a), Federal Rules of Civil Procedure, to consolidate cases pending in the same district. *Powell v. Nat'l Football League,* 764 F.Supp. 1351, 1359 (D.Minn. 1991); *A/S Ludwig Mowinckles Rederi v. Tidewater Constr. Co.,* 559 F.2d 928 (4th Cir.1977); *N.A.A.C.P. of Louisiana v. Michot,* 480 F.2d 547 (5th Cir.1973).
>
> Rule 42 requires the presence of common questions of law and fact as a prerequisite for any consolidation. *Magnavox Co. v. APF Electronics, Inc.,* 496 F.Supp. 29 (N.D.Ill.1980). The fact that a common question of law exists does not, however, justify consolidation in the absence of other factors which would promote trial convenience and economy in administration. *Prudential Ins. Co. of America v. Marine Nat'l Exchange Bank,* 55 F.R.D. 436 (E.D.Wis.1972). Moreover, consolidation is not justified when the cases are in different phases of pretrial procedures. *Schacht v. Javits,* 53 F.R.D. 321 (S.D.N.Y.1971).
>
> Thus, in determining whether consolidation is appropriate, "the court must balance the savings of time and effort resulting from consolidation against any inconvenience, delay or expense that it would cause. *See, e.g., Rohm & Haas Co. v. Mobil Oil Corp.,* 525 F.Supp. 1298,

---

1. Bode was not a party in the *Watnem* case.

1309 (D.Del.1981) (citations omitted)." *Powell,* 764 F.Supp. at 1359.

Finally, the party seeking consolidation bears the burden of establishing that it would promote judicial convenience and economy. *Powell,* 764 F.Supp. at 1359. *Fleishman v. Prudential–Bache Securities, Inc.,* 103 F.R.D. 623 (E.D.Wis.1984).

The court finds the plaintiff in the [Watnem] case would be prejudiced by consolidation at this late date, which would delay the trial of [the Watnem case]. In addition, the two cases the defendant seeks to consolidate are at widely differing stages; the [Lyons] case is just beginning, in terms of discovery and pretrial preparation, while the [Watnem] case is almost ready for trial. Accordingly, the motion to consolidate (Doc. No. 6) is denied.

(Doc. No. 12)

In June 2000, the Watnem case was tried to verdict before a jury. At the conclusion of the evidence, the jury was instructed on Watnem's theory that Andersen was negligent because of his failure to have his vehicle under control and his failure to operate his vehicle in a careful and prudent manner. On June 26, 2000, the jury returned a verdict finding no negligence on Andersen's part. Judgment was entered in favor of Andersen on June 26, 2000. *See Watnem,* Doc. No. 62. Thereafter, Watnem filed a motion for new trial, which was denied by the court[2] and not appealed.

Throughout the Watnem trial, the Lyons's attorney, Paul Doster, sat at Watnem's counsel table, but the Lyons plaintiffs "deny any suggestion by the defendants that Lyons or Doster had any influence or control over the strategies implemented by Watnem in the Watnem trial such that Lyons had a full and fair opportunity to litigate the negligence of Andersen." (Doc. No. 35, ¶ 13) Lyons

---

**2.** In its Order denying Watnem's motion for new trial, the court held, *inter alia:*

Factually and legally, this is a simple case. There were few objections or disputes either before or during the trial. There were no significant objections to the jury instructions. The case involved, in simple terms, a question of which set of evidence the jury chose to believe. The jury evidently decided the defendant's evidence was more believable, and therefore found for the defendant. The plaintiff now asks the court to find this result to be against the weight of the evidence.

The court has the power to order a new trial, even if substantial evidence supports the jury's verdict. *White v. Pence,* 961 F.2d 776, 780 (8th Cir.1992). However, under the facts of this case, the court declines to do so.

In the present case, the plaintiff was a passenger in a vehicle traveling south on an icy highway, while the defendant was driving a tractor-trailer traveling north on the same highway. The plaintiff's vehicle and the rear portion of the defendant's trailer collided, and the plaintiff suffered serious injuries. The plaintiff's theory was that the trailer swung into her lane, causing the collision. The defendant's theory was that the plaintiff's driver lost control and slid into the defendant's lane.

The parties presented directly conflicting evidence. The plaintiff's driver testified she did not lose control, and the trailer swerved into her lane. The defendant testified his trailer did not swerve, and the only way the collision could have occurred was if the plaintiff's driver lost control of her vehicle. The plaintiff called an expert witness who testified the collision occurred in the plaintiff's lane of travel. The defendant called an expert witness who testified the collision occurred in the defendant's lane of travel. The plaintiff also called an officer who responded to the scene, who testified he believed the collision occurred in the plaintiff's lane of travel. The court does not find the other testimony to be consequential.

While the court may not have reached the same conclusions as the jury, the court cannot say the jury's verdict was a miscarriage of justice. The jury, as the trier of fact, weighed the conflicting evidence and ultimately found the defendant was not negligent. The verdict was a reasonable one, not demonstrably against the weight of the evidence.

The court does not find the plaintiff has shown the verdict "was against the great weight of the evidence so as to constitute a miscarriage of justice." *Ogden v. Wax Works, Inc.,* 214 F.3d 999, 1010 (8th Cir. 2000).

*Watnem,* Doc. No. 68.

was not a party to the Watnem action, although Lyons did testify as a witness for Watnem at trial. Doster did not openly participate in the proceedings.

The defendants in the present case are seeking summary judgment under the doctrine of issue preclusion, also known as collateral estoppel.[3] Advocating a defensive use of the doctrine, the defendants argue the Watnem jury's finding that Andersen was not negligent precludes relitigation of the same issue in this case. In addition, the defendant Bode argues that under applicable law, he cannot be held vicariously liable for any negligence Andersen may have committed. Each of these issues is addressed below.

Preliminarily, the court notes the defendants' motion also seeks to exclude evidence pursuant to Federal Rule of Evidence 104(a).[4] Rule 104(a) permits the court to decide evidentiary questions in advance of trial. *See, e.g., Sorensen v. Shaklee Corp.*, 31 F.3d 638, 648 (8th Cir. 1994) (deciding prior to trial whether to admit expert scientific testimony); *United States v. Hoelscher*, 914 F.2d 1527, 1539–40 (8th Cir.1990) (deciding prior to trial whether to admit statements of co-conspirators); *see also Newton v. Ryder Transp. Services, Inc.*, 206 F.3d 772, 775 (8th Cir. 2000).

To the extent the issues raised in the defendants' motion are case-dispositive, the court will address them in the context of summary judgment. To the extent the issues are not case-dispositive, the court will address them in the context of a motion under Rule 104(a) for a ruling on an evidentiary question in advance of trial.

## III. LEGAL ANALYSIS

### A. Standards for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure governs motions for summary judgment and provides that either party to a lawsuit may move for summary judgment without the need for supporting affidavits. Fed.R.Civ.P. 56(a) & (b). Rule 56 further states that summary judgment

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed.R.Civ.P. 56(c). "A court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, ... and give [the nonmoving party] the benefit of all reasonable inferences that can be drawn from the facts." *Lockhart v. Cedar Rapids Comm. Sch. Dist.*, 963 F.Supp. 805, 814 (N.D.Iowa 1997) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

The party seeking summary judgment must " 'inform[ ] the district court of the basis for [the] motion and identify[ ] those portions of the record which show lack of a genuine issue.' " *Lockhart*, 963 F.Supp. at 814 (quoting *Hartnagel v. Norman*, 953 F.2d 394, 395 (8th Cir.1992)); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). A genuine issue of material fact is one with a real basis in the record. *Lockhart*, 963 F.Supp. at 814 n. 3 (citing *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56). Once the moving party has met its initial burden under Rule 56 of showing there is no genuine issue of material fact, the nonmoving party, "by affidavits or as other-

---

**3.** *See Hunter v. City of Des Moines*, 300 N.W.2d 121, 123 n. 2 (Iowa 1981).

**4.** Federal Rule of Evidence 104(a) provides:
  (a) Question of admissibility generally. Preliminary questions concerning the quali-
fication of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court.... In making its determination it is not bound by the rules of evidence except those with respect to privileges.

wise provided in [Rule 56],[5] must set forth specific facts showing that there is a genuine issue for trial." Rule 56(e); *Lockhart*, 963 F.Supp. at 814 (citing *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356).

Addressing the quantum of proof necessary to successfully oppose a motion for summary judgment, the United States Supreme Court has explained the nonmoving party must produce sufficient evidence to permit " 'a reasonable jury [to] return a verdict for the nonmoving party.' " *Lockhart*, 963 F.Supp. at 815 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Furthermore, the Court has held the trial court must dispose of claims unsupported by fact and determine whether a genuine issue exists for trial, rather than "weigh the evidence and determine the truth of the matter." *Lockhart*, 963 F.Supp. at 815 (citing *Anderson*, 477 U.S. at 249, 106 S.Ct. at 2510–11; *Celotex*, 477 U.S. at 323–24, 106 S.Ct. at 2552–53; *Matsushita*, 475 U.S. at 586–87, 106 S.Ct. at 1355–56).

The Eighth Circuit recognizes "summary judgment is a drastic remedy and must be exercised with extreme care to prevent taking genuine issues of fact away from juries." *Wabun–Inini v. Sessions*, 900 F.2d 1234, 1238 (8th Cir.1990) (citing Fed.R.Civ.P. 56(c)). The Eighth Circuit, however, also follows the principle that "summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.' " *Id.* (quoting *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548); *Hartnagel v. Norman*, 953 F.2d 394, 396 (8th Cir.1992).

Thus, the trial court must assess whether a nonmovant's response would be sufficient to carry the burden of proof at trial. *Hartnagel*, 953 F.2d at 396 (citing *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548). If the nonmoving party fails to make a sufficient showing of an essential element of a claim with respect to which it has the burden of proof, then the moving party is "entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Woodsmith*, 904 F.2d at 1247. However, if the court can conclude that a reasonable jury could return a verdict for the nonmovant, then summary judgment should not be granted. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Burk*, 948 F.2d at 492; *Woodsmith*, 904 F.2d at 1247.

### B. Issue Preclusion

■ The defendants, as the proponents of issue preclusion, have the burden of proof. *Bertran v. Glens Falls Ins. Co.*, 232 N.W.2d 527, 531 (Iowa 1975); *Oldham v. Pritchett*, 599 F.2d 274, 277 (8th Cir. 1979). The parties agree the determination of this question is left to the discretion of the court. *See* Doc. No. 28, pp. 4–5; Doc. No. 36, p. 5; *see also Setter v. A.H. Robins Co., Inc.*, 748 F.2d 1328, 1330 (8th Cir.1984). Where, as here, the same judge who presided over the prior case is presiding over the later case, the judge's determination is entitled to great weight. *Oldham*, 599 F.2d at 281.

### 1. Choice of law

■ As a general principle, a federal court sitting in diversity must apply the substantive law of the state in which the cause of action arose. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938); *Clark v. Kellogg Co.*, 205 F.3d 1079, 1082 (8th Cir.2000). Furthermore, "if the state law is ambiguous, [the court must] predict how the highest court of that state would resolve the issue." *Clark, supra.*

■ The Circuit Courts of Appeal are not in agreement on what law should be applied to a claim of issue preclusion in a diversity case where the prior judgment

---

**5.** *I.e.*, by "affidavits ... supplemented or opposed by depositions, answers to interrogatories, or further affidavits." Fed.R.Civ.P. 56(e).

was in federal court, rather than a state court. In the Eighth Circuit, however, it is clear that state law applies, at least where, as here, the prior judgment also was in a diversity case. As the Eighth Circuit Court of Appeals held in *Hillary v. Trans World Airlines,* 123 F.3d 1041 (8th Cir.1997), *cert. denied,* 522 U.S. 1090, 118 S.Ct. 881, 139 L.Ed.2d 870 (1998):

> Although the majority of circuits have held that the res judicata effect of a federal court judgment in a diversity action is a matter of federal law, "cases from this circuit have consistently concluded that [the res judicata or] collateral estoppel [effect of a prior judgment] in a diversity action is a question of substantive law controlled by state common law." *Austin v. Super Valu Stores, Inc.,* 31 F.3d 615, 617 (8th Cir.1994) (quoting *Lane v. Sullivan,* 900 F.2d 1247, 1250 (8th Cir.) (citations omitted), *cert. denied,* 498 U.S. 847, 111 S.Ct. 134, 112 L.Ed.2d 101 (1990)). "This Court has consistently looked to state law to determine the effect of the judgment of another federal court in a case where state law supplied the rule of decision. This rule applies when the original judgment is that of another federal court sitting in diversity." *Follette v. Wal–Mart Stores, Inc.,* 41 F.3d 1234, 1237 (8th Cir.1994) (citations omitted), *cert. denied,* 516 U.S. 814, 116 S.Ct. 66, 133 L.Ed.2d 28 (1995).

*Hillary,* 123 F.3d at 1043; accord *Hoppe v. G.D. Searle & Co.,* 1991 WL 259442 (S.D.N.Y., Nov. 26, 1991) (mem.). *But see Deweese v. Town of Palm Beach,* 688 F.2d 731, 733 (11th Cir.1982); *Reimer v. Smith,* 663 F.2d 1316, 1325 (5th Cir.1981); *St. Paul Fire & Marine Ins. Co. v. Weiner,* 606 F.2d 864, 868 (9th Cir.1979); *Kern v. Hettinger,* 303 F.2d 333, 340 (2d Cir.1962) (all holding that, in a diversity case, federal collateral estoppel rules apply rather than law of forum state). Accordingly, the court will decide this issue applying Iowa law.

### 2. Applicable principles of issue preclusion

It is useful in the context of the present case to examine the evolution of the issue preclusion doctrine in Iowa. Accordingly, the court will discuss Iowa case law at length before turning to the application of Iowa law to the particular facts of this case.

Iowa courts long have recognized the principle that parties should not be permitted to litigate the same issue more than once. *See, e.g., Goolsby v. Derby,* 189 N.W.2d 909, 915 (Iowa 1971). Issue preclusion serves a dual purpose in advancing this principle: "First it protects litigants from the 'vexation of relitigating identical issues with identical parties or those persons with a significant connected interest to the prior litigation.' Second it furthers the interest of judicial economy and efficiency by preventing unnecessary litigation." *American Family Mut. Ins. Co. v. Allied Mut. Ins. Co.,* 562 N.W.2d 159, 163 (Iowa 1997) (citations omitted) ("*American Family*"); *see Penn v. Iowa State Board of Regents,* 577 N.W.2d 393, 398 (Iowa 1998); *see also Haberer v. Woodbury County,* 188 F.3d 957, 961 (8th Cir.1999). "[I]n general, issue preclusion should be applied only when the party against whom preclusion is asserted had a full and fair opportunity to litigate." *Harris v. Jones,* 471 N.W.2d 818, 819 (Iowa 1991) (citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 328, 99 S.Ct. 645, 650, 58 L.Ed.2d 552, 560 (1979)); *see Bertran,* 232 N.W.2d at 533 ("full and fair day in court"); *Goolsby,* 189 N.W.2d at 915.

In *Goolsby v. Derby,* 189 N.W.2d 909 (Iowa 1971), Goolsby was a passenger in an automobile owned and operated by Stanley Swan. Goolsby was injured in a collision between Swan's vehicle and a vehicle owned and operated by Carl Derby. At the time of the collision, Goolsby and Swan were on a business trip for their employer, E.G. Staats & Company ("Staats"). Derby died in the collision. Goolsby, alleging Derby had been negli-

gent, sued the administrator of Derby's estate for damages suffered in the collision. Derby's administrator, alleging Swan was negligent, cross-petitioned against Staats for damages and for indemnification or contribution. Goolsby's claims were tried to a jury separately from and prior to the claims in Derby's cross-petition, and the jury returned a verdict in favor of Goolsby and against Derby. *See id.,* 189 N.W.2d at 911. Staats then asked to have Derby's cross-petition dismissed, alleging Derby should be collaterally estopped from pursuing his claim of negligence against Staats. The trial court agreed, and dismissed the cross-petition. *See id.,* 189 N.W.2d at 912. Derby appealed, and the Iowa Supreme Court affirmed.

On appeal, the court identified three traditional prerequisites to collateral estoppel: "(1) identity of issues raised in the successive proceedings, (2) determination of these issues by a valid final judgment to which such determination is necessary, and (3) identity of the parties or privity, often referred to as 'mutuality of estoppel.'" *Id.,* 189 N.W.2d at 913–14. Under the third requirement, "a stranger to the judgment, one not a party to, nor in privity with, a party to the judgment, was not bound by the judgment, and subsequently was not entitled to rely on its effect in a subsequent suit." *Id.,* 189 N.W.2d at 914. Noting the requirement of privity or mutuality had been relaxed in several recent cases,[6] the court held: "The most important factors in determining availability of the doctrine of collateral estoppel notwithstanding a lack of mutuality or privity are whether the doctrine of collateral estoppel is used offensively or defensively [and] whether the party adversely affected by collateral estoppel had a full and fair opportunity to litigate the relevant issue effectively in the action resulting in the judgment." *Id.,* 189 N.W.2d at 916.

The court distinguished the "defensive use" from the "offensive use" of collateral estoppel:

The phrase "defensive use" of the doctrine of collateral estoppel is used here to mean that a stranger to the judgment, ordinarily the defendant in the second action, relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an element of his defense.

On the other hand, the phrase "offensive use" or "affirmative use" of the doctrine is used to mean that a stranger to the judgment, ordinarily the plaintiff in the second action, relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an essential element of his cause of action or claim.

*Id.,* 189 N.W.2d at 913. Summarizing, the court explained, "In other words, defensively a judgment is used as a 'shield' and offensively as a 'sword.'" *Id.* The court noted the following significance of this distinction:

Courts are generally reluctant to make exception to the mutuality rule where a party is urging the offensive use of collateral estoppel to recover damages.... The courts have been more liberal with the exception to the mutuality rule where collateral estoppel is proposed for defensive purposes to bar an action. Such is the present case.

*Id.,* 189 N.W.2d at 916.

The Iowa Supreme Court again addressed this subject in *Hunter v. City of Des Moines,* 300 N.W.2d 121 (Iowa 1981). Hunter was driving a vehicle that collided with another vehicle. Karen Wadle was a passenger in Hunter's vehicle at the time of the collision. Hunter and Wadle filed separate lawsuits against the driver of the other vehicle and the City of Des Moines. Both plaintiffs alleged the city was negligent in failing to remove a snowpile that had obstructed the vision of the drivers involved in the collision. The city moved to consolidate the two cases for trial, and the motion was denied. The Wadle case

6. *See, e.g., Haberer,* 188 F.3d at 962; *Ameri-* *can Family,* 562 N.W.2d at 164.

was the first to be tried, and resulted in a judgment in which the city was found negligent. *See id.,* 300 N.W.2d at 122. Hunter then asked the trial court to rule that the city was precluded from contesting its negligence in his case against the city. The trial court refused, and the case went to trial. The Hunter jury returned a verdict in favor of the city. *Id.* Hunter appealed.

The Iowa Supreme Court noted, "In general, the doctrine of issue preclusion prevents parties to a prior action in which judgment has been entered from relitigating in a subsequent action issues raised and resolved in the previous action." *Id.,* 300 N.W.2d at 123; *see also Milligan v. City of Red Oak, Iowa,* 230 F.3d 355, 360 (8th Cir.2000). Quoting from the Restatement (Second) of Judgments § 68 (Tent. Draft No. 4, 1977), the court explained: "When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." *Hunter,* 300 N.W.2d at 123; *see Haberer,* 188 F.3d at 961.

The court found the three prerequisites to application of the doctrine of issue preclusion set out in *Goolsby* had evolved under Iowa case law into four prerequisites:

> (1) the issue concluded must be identical; (2) the issue must have been raised and litigated in the prior action; (3) the issue must have been material and relevant to the disposition of the prior action; and (4) the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment.

*Hunter,* 300 N.W.2d at 123 (citing *Bertran,* 232 N.W.2d at 533). *See Dettmann v. Kruckenberg,* 613 N.W.2d 238, 244 (Iowa 2000); *Van Oort Constr. Co. v. Nuckoll's Concrete Serv., Inc.,* 599 N.W.2d 684, 689 (Iowa 1999); *Penn,* 577 N.W.2d at 398; *Schneberger v. U.S. Fidelity & Guar. Co.,*

213 N.W.2d 913, 917 (Iowa 1973); *see also In re Evans,* 267 N.W.2d 48, 51 (Iowa 1978); *Milligan,* 230 F.3d at 360; *Haberer,* 188 F.3d at 961–62. The court noted that in addition to these four prerequisites, mutuality or privity is required. However, even where mutuality and privity are lacking, issue preclusion may be imposed defensively "where the party against whom the doctrine is invoked defensively 'was so connected in interest with one of the parties in the former action as to have had a full and fair opportunity to litigate the relevant claim or issue and be properly bound by its resolution.'" *Hunter,* 300 N.W.2d at 123 (citing *Bertran,* 232 N.W.2d at 533; *Larsen v. McDonald,* 212 N.W.2d 505, 507 (Iowa 1973)). *See Dettmann,* 613 N.W.2d at 244; *Penn,* 577 N.W.2d at 398.

The Iowa Court of Appeals discussed the defensive issue preclusion doctrine in *Bryan v. Hall,* 367 N.W.2d 251 (Iowa Ct. App.1985). In that case, David Bryan, age fourteen, was involved in an automobile accident with his mother and Hall. David's mother filed suit against Hall for personal injuries the mother suffered in the accident. The jury found Hall was not negligent. *See id.,* 367 N.W.2d at 252. David then filed an action against Hall for loss of parental consortium as a result of his mother's injuries from the accident. Hall moved for summary judgment based on issue preclusion. The court framed the question presented by these facts as follows:

> Defendant Hall has invoked defensive use of the doctrine of issue preclusion. Defensive use has been defined to mean that a stranger to the judgment, ordinarily the defendant in the second action, relies upon a former judgment as conclusively establishing in his favor an issue which he must prove as an element of his defense. [Citations omitted.] Here, defendant Hall is not a stranger to the judgment but is the direct beneficiary of the earlier judgment, having been judged innocent of any negligent conduct regarding the accident. Thus,

Hall is asserting the shield of issue preclusion not as a stranger but as a party to the first suit.

*Id.,* 367 N.W.2d at 252–53. After an extensive analysis of Iowa law relating to parental consortium claims, which then was in a state of considerable flux, the court dismissed David's claim. *See id.,* 367 N.W.2d at 253–54.

The Iowa Supreme Court examined defensive issue preclusion again in *Opheim v. American Interinsurance Exchange,* 430 N.W.2d 118 (1988). Opheim was injured when his car collided with a vehicle driven by Tim Allie. Opheim brought suit and obtained a judgment against Allie. When a general execution against Allie was returned unsatisfied, Opheim brought an action against American Interinsurance Exchange ("American"), which was Allie's insurance company. Previously, American had obtained a declaratory judgment that there was no coverage for the accident under Allie's policy, so American asserted issue preclusion as a defense to Opheim's suit. The district court granted judgment to Opheim against American in the amount of the outstanding judgment against Allie, and American appealed.

In its analysis, the Iowa Supreme Court made the following observation:

> Ordinarily the phrase "defensive use" of issue preclusion is used to mean the reliance upon a former judgment, by a stranger to that judgment who is a defendant in the second action, as conclusively establishing in his favor an issue which he must prove as an element of his defense. [Citations omitted.] In this case, of course, the doctrine is being invoked defensively against the stranger to the former judgment. However, it is still being used defensively as a "shield."

*Id.,* 430 N.W.2d at 120. The court explained, "The appropriate focus is ... on whether the interest of the insured in the declaratory action was sufficiently connect-ed to the interest of the injured person regarding the issue sought to be precluded." *Id.,* 430 N.W.2d at 120–21.

The court held that when a party against whom the doctrine of issue preclusion is defensively invoked "has a 'community of interest with, and adequate representation by, the losing party in the first action,' the nonmutual party has had a full and fair opportunity to litigate the issue and is properly bound by its resolution in the former action." *Id.,* 430 N.W.2d at 121 (quoting *Clemmer v. Hartford Ins. Co.,* 22 Cal.3d 865, 151 Cal.Rptr. 285, 587 P.2d 1098, 1102 (1978)); *see Van Oort Constr. Co.,* 599 N.W.2d at 690. The court ruled that because Allie had vigorously defended the declaratory judgment action, and because the interests of Opheim and Allie in securing coverage were identical, Opheim should be precluded from pursuing a subsequent action against American. *Opheim,* 430 N.W.2d at 121.

In *Cruise v. Wendling Quarries, Inc.,* 498 N.W.2d 916 (Iowa Ct.App.1993), the Iowa Court of Appeals applied the four factors identified in *Hunter*[7] and permitted a defensive use of collateral estoppel. In an earlier lawsuit, Cruise's employer, Mid–State Construction Company ("Mid–State"), sued Wendling Quarries, Inc. ("Wendling") and Calvin Paup for damages to its semi truck and trailer in a motor vehicle accident. Cruise was the driver of Mid–State's semi truck and trailer at the time of the accident, so Wendling and Paup brought him into the lawsuit as a third-party defendant. Cruise participated in the trial and was permitted to offer evidence on the issue of liability. At the conclusion of the trial, the jury found Mid–State to be 100% at fault, and assigned no negligence to Cruise, Wendling, or Paup. *See id.,* 498 N.W.2d at 917.

Before Cruise was brought into the Mid–State action, he had filed a personal injury action against Wendling,[8] alleging

---

7. *See* discussion of *Hunter, supra.*

8. Cruise's employer was not a party to the personal injury case.

damages arising out of the same accident. The district court in the earlier action applied the doctrine of issue preclusion and granted Wendling summary judgment based on the verdict in Mid–State's action. *See id.,* 498 N.W.2d at 918. The Court of Appeals affirmed.

After reviewing the Iowa Supreme Court's holding in *Hunter,* the Court of Appeals held, "The Supreme Court relaxed the requirement [of privity or mutuality] under certain circumstances with respect to offensive use and indicated it was not necessary in the defensive situation." [9] *Cruise,* 498 N.W.2d at 919 (citing *Hunter,* 300 N.W.2d at 123–25).

In *State ex rel. Casas v. Fellmer,* 521 N.W.2d 738 (Iowa 1994) ("*Casas*"), the State of Iowa filed an action on behalf of Lisa Casas to establish Fellmer's paternity and to collect child support. Several years earlier, Sandra Casas, Lisa's mother, had sued Fellmer for paternity and, after a compromise settlement, the court had entered an order dismissing the case, with a finding that Fellmer was not Lisa's father. *Casas* was a subsequent action by the State to establish paternity and to collect child support. One of the issues faced by the Iowa Supreme Court was whether the State was " 'so connected in interest' " with Sandra " 'as to have had a full and fair opportunity to litigate the . . . issue and be properly bound by its resolution.' " *Id.,* 521 N.W.2d at 741 (citing *Hunter,* 300 N.W.2d at 123).

The court ruled the State's claim was barred by the doctrine of issue preclusion.[10] *Casas,* 521 N.W.2d at 742. In so holding, the court found:

Regarding the State, its only interest in the case occurs directly through Lisa whose interest occurs directly through [Sandra] Casas. Thus, any interest the State has in establishing Fellmer's paternity in order to compel his payment of child support to [Sandra] Casas was fully and fairly litigated in the [earlier paternity] action.

*Id.,* 521 N.W.2d at 743.

In *Brown v. Kassouf,* 558 N.W.2d 161 (Iowa 1997), Jonetta Yenter was driving a vehicle that collided with one being driven by Kassouf. At the time of the collision, Yenter's mother, Brown, was a passenger in Yenter's vehicle. Brown and Yenter filed suit against Kassouf and Yenter's underinsured motorist carrier, State Farm, to recover damages for personal injuries allegedly suffered in the collision. State Farm was severed for purposes of the trial against Kassouf. Shortly before trial, Brown settled with Kassouf. Yenter proceeded to trial against Kassouf, and the jury found Kassouf was not at fault. *See id.,* 558 N.W.2d 161–62. The district court then precluded Brown from litigating Kassouf's fault in her action against State Farm for underinsured motorist coverage. *See id.,* 558 N.W.2d at 162–63.

The Iowa Supreme Court noted that, traditionally, before issue preclusion may be applied, there must be either mutuality of parties (*i.e.,* the parties in both actions must be the same), or privity between the party against whom issue preclusion is to be invoked and the party against whom the issue was decided in the first litigation. *Id.,* 558 N.W.2d at 163; *see also Haberer,*

---

9. While the *Hunter* court held strict privity or mutuality of interest was no longer required, the court required, in their place, a showing that "the party against whom the doctrine is invoked defensively 'was so connected in interest with one of the parties in the former action as to have had a full and fair opportunity to litigate the relevant claim or issue and be properly bound by its resolution.' " *Hunter,* 300 N.W.2d at 123 (internal citation omitted); *see State ex rel. Casas v. Fellmer,* 521 N.W.2d 738, 741 (Iowa 1994); *see also Brown*

*v. Kassouf,* 558 N.W.2d 161, 164 (Iowa 1997). Cruise had such an opportunity in Mid–State's case, having participated in the trial as a third-party defendant, and having offered evidence on the liability issue. Thus, Cruise had a 'full and fair opportunity' to litigate his claim in the Mid–State's action.

10. The court reached this result even though a blood test proved Fellmer was Lisa's father. *See Casas,* 521 N.W.2d at 740.

188 F.3d at 962. The court noted that under more recent authorities, however, neither mutuality nor privity is required

> where issue preclusion is applied defensively if the party against whom issue preclusion is invoked was "so connected in interest with one of the parties in the former action as to have had a full and fair opportunity to litigate the relevant claim or issue and be properly bound by its resolution."

*Brown,* 558 N.W.2d at 163–64 (quoting *Opheim,* 430 N.W.2d at 120). Thus, the court found the central question in the case to be whether Brown was "so connected in interest with Yenter as to have had a full and fair opportunity to litigate the issue of Kassouf's fault in the prior case[.]" *Id.,* 558 N.W.2d at 164.

The court then separately addressed the two prongs of this question; *i.e.,* whether Brown was "connected in interest" with Yenter, and whether Brown had a "full and fair opportunity to litigate" the issue in the prior case:

> [Regarding the "connected in interest" prong,] Brown and Yenter shared an interest in proving as much fault as they could against Kassouf. Yenter, of course, had not settled with Kassouf.... Additionally, from the standpoint of underinsured motorist benefits, both Yenter and Brown would benefit from proving as much fault as they could against Kassouf.... Moreover, Yenter's and Brown's interests were identical on the issue of liability. There were no allegations of fault against either party on this issue.
>
> Turning our attention to the "full and fair opportunity to litigate" prong, we think the facts here are stronger than those in Opheim. Opheim was a stranger to the judgment entered in the declaratory judgment action and was never a party to that action. Brown was likewise a stranger to the judgment in the Yenter v. Kassouf trial. In contrast to Opheim, however, Brown was a party until she settled shortly before trial.

> Brown, Yenter, and other witnesses testified on the fault issue. Brown and Yenter shared the same attorney, who vigorously litigated Kassouf's fault.

*Id.,* 558 N.W.2d at 165–66. Based on this analysis, the court upheld the ruling of the district court that the doctrine of issue preclusion barred Brown's claim against State Farm. *Id.,* 558 N.W.2d at 166.

In *Dettmann v. Kruckenberg,* 613 N.W.2d 238, 244 (Iowa 2000), the Iowa Supreme Court addressed the preclusive effect of a criminal conviction in a later civil suit. Michael Kruckenberg was convicted of vehicular homicide in the death of Laurie Jean Dettmann. Dettmann's administrator filed a wrongful death action against Michael and several other defendants, including Michael's father, Keith Kruckenberg, who was the owner of the vehicle Michael was driving at the time of the accident. Shortly before trial, Michael and Keith indicated they might call a witness to establish that Michael was not driving the vehicle at the time of the accident, and the actual driver of the vehicle was driving without Keith's consent.

In finding Keith was precluded from relitigating the issue of whether Michael was driving the vehicle at the time of the accident, the court held:

> We also reject Keith's contention that even if Michael's criminal conviction is preclusive as to Michael on the driver issue, it is not preclusive as to the issue of Keith's liability under Iowa Code section 321.493(1)(b) as the vehicle owner because Keith was not a party to the criminal proceeding and is not otherwise in priv[it]y with Michael. First, the trial court found that Keith himself testified in the criminal case and therefore had the opportunity to present any relevant evidence concerning the driver issue. Second, an identity of interests existed between Michael and Keith at the time of the criminal proceeding. Keith, as Michael's father and the vehicle owner, had a great personal interest in seeing

that all evidence relevant to Michael's defense was presented in the criminal trial. Additionally, Keith should have been on notice that he was subject to potential civil liability under Iowa Code section 321.493(1)(b) concerning Michael's fault in causing the accident. We believe these facts and section 321.493(1)(b) show that Keith was in priv[it]y with Michael for purposes of application of issue preclusion principles concerning the driver issue.

*Id.,* 613 N.W.2d at 249.

Having fully discussed applicable Iowa law, the court now must address the applicability of the doctrine of issue preclusion in the present case.

### 3. Application of principles to present case

The defendants argue that all four of the *Hunter* prerequisites [11] have been met in this case. They claim Lyons was so connected in interest with Watnem's claim in the former action as to have had a full and fair opportunity to litigate the issue of negligence and properly be bound by its resolution in that action. The plaintiffs respond that one of the four *Hunter* prerequisites has not been satisfied; *i.e.,* they argue the issue of comparative fault was not raised and litigated in the prior action. Further, the plaintiffs argue they did not have a full and fair opportunity to litigate the issue of negligence in the Watnem action. To resolve this issue, the court must address two questions: (a) whether the issue to be precluded in this action, Andersen's fault, was raised and litigated in the prior action; and (b) whether Lyons was so connected in interest with Watnem as to have had a full and fair opportunity to litigate the issue of Andersen's fault in the prior case. *See Brown,* 558 N.W.2d at 164.

**11.** *See* discussion, *supra.*

**12.** Comparative fault was not an issue in the *Watnem* case because Watnem was a passen-

### a. Was the issue to be precluded in this action raised and litigated in the Watnem action?

As noted above, the defendants argue all four prerequisites for issue preclusion set out in *Hunter* have been met in this case. The plaintiffs assert, without argument, "collateral estoppel is not appropriate because all four prerequisites ... are not established. The issue is not identical because fault was not compared in Watnem as it will be in the present case." [12] (Doc. No. 36, p. 9) The defendants reply that "comparative fault makes no difference when applying collateral estoppel in this case." (Doc. No 38, p. 2, ¶ 6)

The court agrees with the defendants that all four of the *Hunter* prerequisites for issue preclusion have been met: (1) the issue in both cases is identical—whether or not Andersen was at fault; (2) Andersen's fault was raised and fully litigated in the Watnem action; (3) Andersen's fault was material and relevant to the disposition of the Watnem case; and (4) the determination of Andersen's fault was both necessary and essential to the judgment in Andersen's favor in the Watnem action.

The court also agrees with the defendants that the presence or absence of comparative fault in either the Watnem case or the case at bar is immaterial. *Cf. Cruise,* 498 N.W.2d at 917. In completing the verdict form in the present case, before the jury will be asked to assign any degree of fault to the respective parties, the jury first will be asked to determine whether Andersen was at fault. The Watnem jury answered "no" to this very question. If the jury were to give the same answer to the question of Andersen's fault on the verdict form in the present case, the jury would be instructed to answer no further questions, and would not even reach any questions concerning Lyons's comparative fault.

ger in the ambulance being driven by Lyons, and no party alleged Watnem's actions contributed in any way to the collision.

The court finds the issue of Andersen's fault was raised and litigated properly in the Watnem case.

### b. Was Lyons so connected in interest with Watnem as to have had a full and fair opportunity to litigate the issue of Andersen's fault in the Watnem case?

The defendants argue Lyons was so connected in interest with Watnem as to have had a full and fair opportunity to litigate the issue of Andersen's fault in the Watnem case. The plaintiffs argue they did not have had a full and fair opportunity to litigate the issue of Andersen's fault in the Watnem case.

■ In general, issue preclusion is applied only where the party against whom issue preclusion is being asserted has had a full and fair opportunity to litigate the issue. *Harris,* 471 N.W.2d at 819. Here, the Lyons plaintiffs have not previously litigated Andersen's fault in any lawsuit, and have had no direct opportunity to litigate the issue in any case. This does not end the court's inquiry, however, because issue preclusion also may be used defensively where the party against whom the doctrine is to be invoked was so connected in interest with one of the parties in the former action as to have had a full and fair opportunity to litigate the issue and properly be bound by its resolution. *Hunter,* 300 N.W.2d at 123. This means the Lyons plaintiffs may be precluded from litigating the issue of Andersen's negligence in the present case if they were so connected in interest with Watnem that Watnem's prosecution of her claims against Andersen in the Watnem case was sufficient to constitute a full and fair opportunity for the Lyons plaintiffs to prosecute their claims against Andersen.[13] *See Brown,* 558 N.W.2d at 163–64.

■ The Iowa courts have held there are two prongs to this question: (1) was the party against whom issue preclusion is to be invoked (here, the Lyons plaintiffs) sufficiently connected in interest with the party against whom the issue was decided in the prior action (here, Watnem), and (2) was there a full and fair opportunity to litigate the issue in the prior action. *See Brown,* 558 N.W.2d at 165–66. Interpreting Iowa law, the Eighth Circuit used an overlapping definition for these two prongs:

> [W]hether a party had a "full legal opportunity for an investigation and determination" does not test the fairness of the first action.... Rather, it tests whether defensive collateral estoppel applies "where the plaintiff in the second action was not a party in the first action but was so aligned with the party in the first action (such as an employer of an employee in the first action) that [the plaintiff in the second action] had every incentive and opportunity to litigate the first [action]."

*Haberer,* 188 F.3d at 963 (citations omitted). There is no question Watnem had a full and fair opportunity to litigate the issue of Andersen's fault in the prior action, or that she, in fact, did so. Thus, in the present case, as in *Haberer,* the two-pronged inquiry collapses into one question: Was Lyons so connected in interest with Watnem that the results of Watnem's litigation of this issue in the prior case should bind the Lyons plaintiffs in this case? Resolution of this question requires application of the Iowa case law discussed above to the facts of this case.

In *Goolsby,* the Iowa Supreme Court abandoned the requirement that there be either mutuality of interest or privity before issue preclusion may be applied defensively. In that case, a stranger to the prior action was permitted to use collateral

---

13. For purposes of this analysis, the court sees no distinction between the claims of Holly Lyons and the derivative claims of the other Lyons plaintiffs. Similarly, for purposes of this analysis, the court sees no distinction between the claims against Andersen and the claims against Bode. *Cf. Bryan,* 367 N.W.2d 251 (1985).

estoppel defensively to prevent a party to the prior action from relitigating an issue on which that party had been unsuccessful in the prior action. The party being precluded in *Goolsby* had been a party to the prior action, which is, of course, significantly different from the present case, in which a party to the prior action (Andersen) is attempting to use collateral estoppel defensively to prevent a non-party to the prior action (the Lyons plaintiffs) from litigating an issue. In the present case, the Lyons plaintiffs would not be relitigating an issue, but would be litigating the issue for the first time.

In the next significant ruling on this issue by the Iowa Supreme Court, *Hunter*, the plaintiff, a non-party to the prior action, asserted collateral estopped offensively to prevent the City of Des Moines from relitigating the issue of liability in the second action. The court noted, "The record discloses nothing from which it could be inferred that the city lacked a full and fair opportunity in the prior action to litigate the issues in question." *Hunter*, 300 N.W.2d at 126. The court held issue preclusion could be used offensively against the city even though there was no mutuality or privity; however, it is significant that the city was a party to both actions. In the present case, the Lyons plaintiffs were not parties to the prior action, so they would be litigating the issue of liability for the first time. Interestingly, even though the court in *Hunter* ruled that offensive issue preclusion was available, the court refused to apply the doctrine because the plaintiff "could easily have effected joinder" in the prior action and did not do so.

*Id.* In the present action, when the defendants moved to effect joinder with the *Watnem* action, the Lyons plaintiffs did not object; joinder was disallowed based on Watnem's objection that consolidating the two cases would have delayed Watnem's trial significantly.

In *Cruise*, the Iowa Court of Appeals applied issue preclusion defensively to dismiss a case in which the central issue, the alleged fault of the defendant, had been decided adversely to the plaintiff in an earlier case in which the plaintiff was a party and had offered evidence and otherwise participated in the trial. This holding has no bearing on the present case. *See also Israel v. Farmers Mut. Ins. Ass'n*, 339 N.W.2d 143, 147 (Iowa 1983).

*Bryan, Casas, Opheim,* and *Brown* all involved the defensive application of issue preclusion against a plaintiff who was not a party to an action where the issue in question was litigated previously. In each of these cases, the issue in question was fully and fairly litigated in the prior action, and the only remaining question was whether the connection between the party against whom issue preclusion was to be applied in the subsequent case and the losing party in the prior litigation was sufficient to support the application of the doctrine in the subsequent case.

In *Bryan*, the plaintiff brought a lawsuit for loss of parental consortium he allegedly suffered when his mother was injured in a motor vehicle accident. His mother previously had brought an unsuccessful action against the same defendant for injuries suffered in the same accident.[14] In *Casas*,

---

14. In *Bryan*, the court identified six factors commonly found in decisions that have precluded non-parties:
   (1) the second suit is closely related to the first, (2) the point of view of the precluded party was adequately represented; (3) often the same judge presided over both cases; (4) a second trial was considered to be a waste of time; (5) the party precluded participated in the first suit; and (6) frequently the sequence of litigation was deliberately arranged by the litigants for tactical reasons.

*Bryan*, 367 N.W.2d at 253. While this listing of common factors does not appear to be a test for determining whether issue preclusion should be applied in a given case, the application of these factors to the present case would result in the following conclusions: (1) the second suit is closely related to the first, (2) the Lyons plaintiffs' point of view was adequately represented in the *Watnem* case; (3) the same judge would preside over both cases; (4) there is no evidence that a second trial would be a waste of time; (5) Lyons did

the plaintiff in the prior case was a mother suing to establish the defendant's paternity of her child. In the later case, the plaintiff was the State, suing on behalf of the same child on the same issue; *i.e.*, to establish paternity. In both of these cases, the connection between the plaintiffs in the earlier actions and the plaintiffs in the later actions was direct and substantial, and the claims of the plaintiffs in the later actions were derivative of the claims of the plaintiffs in the earlier actions. In *Bryan*, a child pursuing a claim for loss of consortium with his mother was precluded from litigating an issue decided adversely to his mother in an earlier lawsuit arising out of the same incident. In *Casas*, the State, pursuing a paternity claim on behalf of a child, was precluded from litigating an issue decided adversely to the mother of the child in an earlier lawsuit for the same relief filed by the mother on behalf of the child.

*Opheim* and *Brown* present more difficult questions.[15] In *Opheim*, there were three parties to three separate actions. In the first action, Opheim sued Allie and won on a claim of negligence. In a separate action, Allie's insurance company (American) sued Allie and obtained a declaratory judgment that it was not obligated to provide coverage for the accident. In the third action, Opheim sued American, alleging American was obligated to provide coverage for Allie's negligence. American defended Opheim's action on the basis of its prior declaratory judgment against Allie. The court found Opheim and Allie were sufficiently connected so as to preclude Opheim from claiming coverage under Allie's policy with American.[16]

In *Brown*, two plaintiffs, a mother and daughter, sued a defendant and the daughter's underinsured motorist carrier for damages arising out of a motor vehicle collision. The mother and daughter were represented by the same attorney. The mother settled with the defendant, and the daughter proceeded to trial against the defendant and lost. The mother then attempted to recover against her daughter's underinsured motorist carrier, and the court precluded her from arguing coverage based on the results of her daughter's trial. In addition to the obvious family connection between the mother and her daughter, the mother's claim against her daughter's insurance company was derivative of her daughter's claim against her own insurance carrier, which was defeated by the judgment against the daughter in her action against the defendant. Notably, the court found the precluded issue would not have been tried differently in the subsequent case. *See Brown*, 558 N.W.2d at 166; *see also Opheim*, 430 N.W.2d at 121.

In the present case, Lyons and Watnem are, for purposes of issue preclusion analysis, true strangers. Their rights against Andersen are separate and independent, and the rights of each are in no sense derivative of the rights of the other. Lyons and Watnem are, however, connected in several ways: (a) they were co-employees; (b) they were riding in the same vehicle at the time of the collision; (c) Lyons testified at the Watnem trial;

not participate in the first suit; and (6) there is no evidence that the sequence of litigation was deliberately arranged by the litigants for tactical reasons.

**15.** On its facts, *Dettmann v. Kruckenberg*, 613 N.W.2d 238, 244 (Iowa 2000), presents similar difficult questions. However, *Dettmann* involved the offensive use of issue preclusion, and the Iowa Supreme Court found the precluded party (the father) was in privity with the party against whom the issue was decided in the earlier action (the son). *Id.*, 613

N.W.2d at 249. Thus, the court did not specifically address the adequacy of the connection between the parties.

**16.** The court concluded the interests of Opheim and Allie were connected, but did not state how, other than to observe they had a "community of interest." *Opheim*, 430 N.W.2d at 121. The interests of Opheim and Allie were connected by the fact that Opheim's claim against American was derivative of Allie's own claim against American.

and (d) Lyons's attorney sat at Watnem's counsel table throughout the Watnem trial. This set of facts presents the court with an extremely close question.

The court is cognizant of the law in Iowa that permits a "virtual opportunity to litigate" where there is a significant connection between a party and another party who fully and fairly litigated the issue in another proceeding. However, all of the cases where such a connection was found involved derivative claims and connections between the parties that were more significant than those in the present case.

The court gives great weight to the fact that Lyons did not resist efforts to consolidate her case with the Watnem case. The court refused Andersen's efforts to consolidate the cases based on Watnem's resistance to the consolidation and because consolidation would have substantially delayed Watnem's trial. From this record, there is no evidence that Lyons resisted consolidation or attempted in any other way to gain some type of tactical advantage from separate trials. Also, although one of the Lyons plaintiffs' attorneys sat at counsel table during the Watnem trial, he did not participate in the trial in any manner, and he was not present for bench conferences and other consultations between the court and counsel. Furthermore, the attorneys for the Lyons plaintiffs assure the court they will present their case differently from the way Watnem presented her case.

■ The court finds the defendants have failed to sustain their burden of proving that issue preclusion should apply to bar the claims of the Lyons plaintiffs in the present case. The court recognizes this ruling could lead to a result in the present case that is inconsistent with the

results in the Watnem case. However, "jury verdicts are sometimes inconsistent or irrational." *Hoag v. New Jersey,* 356 U.S. 464, 472, 78 S.Ct. 829, 835, 2 L.Ed.2d 913 (1958). If the jury in this case reaches a different result than the jury in the Watnem case, the inconsistency is not fatal to the Lyons's recovery. *See Jayne v. Mason & Dixon Lines,* 124 F.2d 317, 319 (2d Cir.1941) (citing *Dunn v. United States,* 284 U.S. 390, 393, 52 S.Ct. 189, 190, 76 L.Ed. 356 (1932) ("Consistency in the verdict is not necessary.")).[17]

The court is concerned that the Lyons plaintiffs have not yet had an opportunity to litigate their claims in any forum. While inconsistent verdicts between the present case and the Watnem case might seem unfair to Andersen, the court finds that denying the Lyons plaintiffs their day in court would be a more serious injustice in the circumstances of this case.

### C. Vicarious Liability

Bode moves for summary judgment in his favor on the basis that "he is not legally liable to plaintiffs under Iowa Code § 321.493" (Doc. No. 27, p. 3; Doc. No. 38, p. 4), and further, he is exempted by federal regulation "from vicarious liability based upon the presence of motor carrier placards." (Doc. No. 38, p. 4 [18]) Bode argues the state statute governs vicarious liability in this case, and protects him from liability because the trailer, which Bode owned, is not a "motor vehicle" as defined by the statute. (*See* Doc. No. 27, p. 4).

The plaintiffs respond that the cited regulation and interpretive case law impose liability upon Bode for Andersen's negligence (if any) under these facts. They argue further that federal law "preempts Iowa Code § 321.49," and makes Bode "li-

---

17. Inconsistent verdicts have long been permitted in a criminal context. Although "the rule is less clear" in civil cases, the criminal cases have been cited as support for leaving apparently inconsistent civil verdicts undisturbed. *See City of Los Angeles v. Heller,* 475 U.S. 796, 804–05, 106 S.Ct. 1571, 1576–77, 89 L.Ed.2d 806 (1986); *Fairmount Glass Works v. Cub Fork Coal Co.,* 287 U.S. 474,

485, 53 S.Ct. 252, 255, 77 L.Ed. 439 (1933) (citing *Dunn* ).

18. Bode mis-cites the applicable regulation as "49 C.F.R. § 376(1)(c)." (Doc. No. 38, p. 4). The correct regulatory citation is 49 C.F.R. § 376.12(c)(1).

able for the negligence of the driver of a leased vehicle." (Doc. No. 34, pp. 1–2; Doc. No. 36, pp. 10–13). In oral argument, the plaintiffs clarified they are not claiming Bode is liable under the Iowa statute, but only under federal law.

As explained below in detail, both the plaintiffs and Bode have misinterpreted the applicable law.

### 1. Discussion of applicable law

The Tenth Circuit Court of Appeals provided "a brief overview and history" of the independent trucking industry and regulations governing motor carriers in *Empire Fire & Marine Insurance Co. v. Guaranty National Insurance Co.*, 868 F.2d 357 (10th Cir.1989). The following portion of the court's analysis is useful in this case:

> In the past, the use by truckers of leased or borrowed vehicles led to a number of abuses that threatened the public interest and the economic stability of the trucking industry. *See, e.g., American Trucking Ass'ns v. United States*, 344 U.S. 298, 304–05, 73 S.Ct. 307, 311–12, 97 L.Ed. 337 (1953). In some cases, ICC-licensed carriers used leased or interchanged vehicles to avoid safety regulations governing equipment and drivers. *Id.* at 305, 73 S.Ct. at 312. In other cases, the use of non-owned vehicles led to public confusion as to who was financially responsible for accidents caused by those vehicles. *See, e.g., Mellon Nat'l Bank & Trust Co. v. Sophie Lines, Inc.*, 289 F.2d 473, 477 (3d Cir. 1961).
>
> In order to address these abuses, Congress amended the Interstate Commerce Act to allow the ICC to prescribe regulations to insure that motor carriers would be fully responsible for the operation of vehicles certified to them. 49 U.S.C. § 304(e) (1956). This section was revised and reenacted in 1978. *See* 49 U.S.C. § 11107; *see also* 49 U.S.C. § 10927. In response to this mandate, the ICC promulgated regulations requiring that every lease entered into by an ICC-licensed carrier must contain a provision stating that the authorized carrier maintain "exclusive possession, control, and use of the equipment for the duration of the lease," and "assume complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. § 1057.12(c).

*Id.,* 868 F.2d at 362.

In 1986, at the request of the Interstate Carriers Conference, the ICC amended the "control regulation," as it often is called, to assist carriers in limiting their liability when an equipment owner continues to display the carrier's identification placard (bearing the carrier's logo and DOT number) after termination of a lease contract. Although that is not the case here, as Andersen and Bode were parties to a current continuous lease at the time of the accident, Bode nevertheless argues the ICC's comments made in connection with the regulatory amendment support his theory. In its "Discussion and Conclusions," the Commission explained:

> As noted by the comments, certain courts have relied on Commission regulations in holding carriers liable for the acts of equipment owners who continue to display the carrier's identification on equipment after termination of the lease contract. We prefer that courts decide suits of this nature by applying the ordinary principles of State tort, contract, and agency law. The Commission did not intend that its leasing regulations would supersede otherwise applicable principles of State tort, contract, and agency law and create carrier liability where none would otherwise exist. Our regulations should have no bearing on this subject. Application of State law will produce appropriate results.
>
> Our final rules are designed to make clear that our leasing rules do not and are not intended either to assign liability based on the existence of placards or to interfere with otherwise applicable State law.... [W]e will not revise 49 C.F.R. § 1057.12(c)(1) [now § 376.12(c)(1) ] to

state that a carrier is liable for the operation of the equipment by the owner-lessor only so long as the lease contract, by its own terms, remains in effect. To do so could be interpreted as an attempt to influence State law. Liability in these situations depends on a variety of factual and legal determinations outside the scope of Commission jurisdiction. Nevertheless, we repeat that our rules are not intended to influence in any fashion a court's liability determination.

3 I.C.C.2d 92, 93 (1986). Bode claims the Commission's discussion places determination of his liability solely within the four corners of Iowa law, without regard for the federal regulatory requirements. As discussed below, however, there is no conflict between Iowa law and the federal regulation.

The ICC regulation was amended again in 1992, to make it clear that the "control regulation," has no bearing on whether or not a driver is an employee or agent of the carrier. The ICC noted some courts had relied on the language of the "control regulation" as *prima facie* evidence of the driver's employment status. *See* 8 I.C.C.2d 669, 670–71 (1992). Accordingly, the ICC added subparagraph (c)(4) to section 1057.12, to make it clear the regulations do not affect a determination of "whether the lessor or driver provided by the lessor is an independent contractor or an employee of the authorized carrier lessee." 49 C.F.R. § 376.12(c)(4).[19] That determination is not in issue here.

In relevant part, the ICC regulation applicable to this case provided, at the time of the accident in question, as follows:

(c) Exclusive possession and responsibilities

(1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

49 C.F.R. § 376.12(c)(1).

The Iowa statute relied upon by the defendants provided in relevant part, at the time of the accident, as follows:

In all cases where damage is done by any motor vehicle by reason of negligence of the driver, and driven with the consent of the owner, the owner of the motor vehicle shall be liable for such damage. For purposes of this subsection, "owner" means the person to whom the certificate of title for the vehicle has been issued or assigned or to whom a manufacturer's or importer's certificate of origin for the vehicle has been delivered or assigned. However, if the vehicle is leased, "owner" means the person to whom the vehicle is leased, not the person to whom the certificate of title for the vehicle has been issued or assigned or to whom the manufacturer's or importer's certificate of origin for the vehicle has been delivered or assigned. For purposes of this subsection, "leased" means the transfer of the possession or right to possession of a vehicle to a lessee for a valuable consideration for a continuous period of twelve months or more, pursuant to a written agreement.

IOWA CODE § 321.493(1) (1995) (emphasis added). The defendants point to the definition of "owner" in the second sentence, but overlook the remainder of the section dealing with ownership of leased vehicles for purposes of the statute.[20]

---

**19.** Section 1057.12 was renumbered in 1997 as section 376.12, without changing the language of either of the subparagraphs relevant to this case (*i.e.*, subparagraphs (c)(1) and (c)(4)).

**20.** In their supplemental memorandum, faxed to the court on November 29, 2000, the defendants state the ICC, in connection with its 1986 amendments to the regulations, "considered, and explicitly declined to adopt, a proposal to impose motor carrier liability during the term of a lease contract." This statement

### 2. *Application of the law to this case*

■ Despite the plaintiffs' assertion that they are not proceeding under the Iowa statute, and despite Bode's protestations to the contrary, the Iowa statute and the ICC regulation are in complete harmony. The ICC regulation requires the lessee—Bode, in this case—to assume complete responsibility for operation of the leased equipment during the term of the continuous lease. This requirement is not, as Bode seems to argue, simply governed by the existence or lack thereof of Bode's placard on the vehicle. The Iowa statute provides that as lessee, Bode is considered "owner" of the vehicle for purposes of civil liability. Any reasonable interpretation places liability upon Bode for any negligence the jury attributes to Andersen. Accordingly, both Andersen and Bode are proper parties to this action, and Bode's motion for summary judgment should be denied.

### IV. CONCLUSION

Based upon the foregoing analysis, the court finds the defendants' combined motion for summary judgment and to exclude evidence under Federal Rule of Evidence 104(a) should be denied. The court finds issue preclusion does not apply to exclude the plaintiffs' claims in this case. The court further finds, as a matter of law, that if the jury finds Andersen was negligent and awards the plaintiffs damages, then Bode is jointly and severally liable with Andersen for such damages.

IT IS SO ORDERED.

misrepresents the ICC's action and its comments. As quoted previously, the ICC declined to adopt a proposal extending liability to a carrier *"only* so long as the lease contract, by its own terms, remains in effect." 3 I.C.C.2d at 93 (emphasis added). The purpose of the proposed amendment was to limit