**VAN OORT CONSTRUCTION COMPANY, INC., Jerry Van Oort, Casey Van Oort, and Jeff Wangsness, Appellants,**

v.

**NUCKOLL'S CONCRETE SERVICE, INC., Appellee.**

**No. 97–1614.**

Supreme Court of Iowa.

Sept. 9, 1999.

Rehearing Denied Sept. 27, 1999.

Jonathan C. Wilson and Kris Holub Smith of Davis, Brown, Koehn, Shors & Roberts, P.C., Des Moines, for appellants.

Denis Y. Reed of the Reed Law Office, Des Moines, and Colin C. Murphy, Des Moines, for appellee.

Considered by CARTER, P.J., and LAVORATO, NEUMAN, TERNUS, and HARRIS,* JJ.

TERNUS, Justice.

Appellee, Nuckoll's Concrete Service, Inc., purchased the assets of appellant, Van Oort Construction Company, Inc. Subsequently, Nuckoll's stopped making payments under a collateral noncompete agreement, claiming that Van Oort Construction and appellant, Jerry Van Oort, had breached the covenant not to compete. Appellants then brought this action for breach of contract; Nuckoll's filed a counterclaim. The trial court ruled that the Van Oort parties had breached the contract and that consequently Nuckoll's was justified in not making payments under the noncompete agreement. The court dismissed the plaintiffs' claim and awarded damages to Nuckoll's.

On review by the Iowa Court of Appeals, the court of appeals reversed the trial court's dismissal of the plaintiffs' claim and awarded damages to them; the court affirmed the trial court's judgment on Nuckoll's counterclaim. On further review, we vacate the decision of the court of appeals and affirm the judgment of the district court.

I. *Background Facts.*

A. *Randall Van Oort agreement.* Van Oort Construction Company, Inc. [hereinafter VOCC] was a family-owned business engaged in supplying concrete ready-mix. The company stock was owned by four siblings, Jerry Van Oort, Randall Van Oort, Casey Van Oort, and Shelly Van Oort Wangsness, and Shelly's husband, Jeff Wangsness. This ownership continued until January of 1993, when Randall Van Oort sold his shares in the company to the other stockholders.

Included in the purchase agreement between Randall and the other shareholders was a covenant not to compete executed by Randall. Under this covenant, Randall agreed, for a period of ten years and within a fifty-mile radius of any place of business of VOCC, not to

directly or indirectly, own, manage, operate, control, be employed by, participate in or be connected in any manner with the ownership, management, operation or control of any business similar to the type of business conducted by [VOCC] or that delivers any product also delivered by [VOCC] . . ., except as agent or employee of Central Redi–Mix, Inc.

In addition, during this same ten-year period, Randall could not

lend credit or money for the purpose of establishing or operating a construction business nor lend nor allow his name or

---

* Retired justice serving as senior judge pursuant to Iowa Code section 602.9206 (1999).

reputation to be used in any such construction business or otherwise allow his skill, knowledge or experience to be used in any such business.

In consideration for this covenant, VOCC agreed to pay Randall a $50,000 lump sum and, for sixty months thereafter, $4050 per month with a final payment of $3000. The noncompete covenant was binding upon and inured to the benefit of each party's successors and assigns, including any purchaser of VOCC's assets.

At the time of the Randall Van Oort agreement, Central Redi–Mix was an incorporated business owned by Jerry, Casey and Randall Van Oort. It was not actively in operation at that time.

B. *Nuckoll's contracts.* Approximately one year after Randall was bought out of the family corporation, VOCC's remaining shareholders sold the assets of VOCC to Nuckoll's Concrete Service, Inc. for $3.4 million. At the time of this sale, Nuckoll's was engaged in the ready-mix concrete business in some of the same markets as VOCC. Therefore, in addition to the purchase contract, the parties executed a separate noncompete agreement. Under this agreement, Jerry Van Oort, Casey Van Oort, and Jeff Wangsness agreed, for a period of five years, not to

> directly or indirectly, enter the employment of, or perform any advisory or consulting service for, or make a substantial investment in, any company, partnership, organization, proprietorship, or other entity that engages in the ready-mix concrete business within [a] one hundred (100) mile radius of SELLERS' [VOCC's] current business operations....

In addition, VOCC and its shareholders agreed that Randall Van Oort's noncompete agreement would remain in force as a part of Nuckoll's purchase and would be enforced by VOCC and its shareholders upon Nuckoll's demand. Separate consideration of $450,000, payable in monthly installments, was given for the covenant-not-to-compete agreement.

C. *Randall's breach of contract.* Nuckoll's made the required monthly payments under the noncompete agreement until March 1994, when a dispute developed over whether Jerry Van Oort was engaged in prohibited competitive actions. Nuckoll's immediately stopped making payments, but the matter was soon settled without court action. Nuckoll's resumed payments and paid the back payments it had withheld; VOCC agreed to reduce the amount of Nuckoll's final payment by $11,-700.

Another problem developed in March of 1996. At that time, Nuckoll's learned that Randall was employed by M. Peterson Construction Co. as a dispatcher for its ready-mix business, A–1 Ready Mix. Randall's duties included significant customer contact, including answering the phone, scheduling drivers, and scheduling deliveries of ready-mix concrete.

Nuckoll's believed that Randall was violating his noncompete agreement with VOCC, which had been made a part of Nuckoll's contract with VOCC and its shareholders. Nuckoll's demanded that VOCC enforce the agreement. VOCC, through its attorney, then sent a letter to Randall demanding that he cease his employment with M. Peterson. After receiving this letter, and at Jerry's suggestion, Randall filed articles of incorporation for "Central Redi–Mix, Inc." (Apparently, the prior family-owned corporation known as "Central Redi–Mix, Inc." had ceased to exist.)

Randall continued to work at M. Peterson in the same capacity, but his paychecks were made payable to Central Redi–Mix, Inc. Randall was the sole officer and employee of Central Redi–Mix. He engaged in no other business efforts other than his service for M. Peterson. Neither M. Peterson nor Central Redi–Mix withheld taxes or social security from Randall's earnings. M. Peterson continued to withhold Randall's personal child support obligation from its checks to Central Redi–

Mix. Randall filed no corporate tax returns and held no corporate meetings.

D. *VOCC's injunction action against Randall Van Oort.* By this time Nuckoll's had ceased making payments under the VOCC noncompete agreement. VOCC then sought a temporary injunction against Randall to enjoin him from violating the terms of his covenant not to compete. Nuckoll's was aware that this action was pending, but was not involved in the proceeding.

After a trial to the court, the district court denied VOCC's request for injunctive relief. The court ruled that Randall did not violate his covenant not to compete because he engaged in the prohibited competition as an employee of Central Redi–Mix, Inc. In dicta, the district court also held that VOCC had satisfied its obligation under its noncompete agreement with Nuckoll's by bringing the injunction action against Randall.

E. *Jerry's breach of contract.* In January 1997, Jerry Van Oort reentered the ready-mix business as V.O.C. Concrete in direct violation of the VOCC noncompete agreement. The cement operation was formed under Jerry's partnership in a land excavating business that he started in 1994 with the proceeds from the sale of VOCC's assets. Jerry testified that he was forced into the cement business because he needed to mitigate his damages resulting from Nuckoll's continued refusal to make the installment payments under the noncompete agreement. After Jerry formed V.O.C. Concrete, Randall, still operating as Central Redi–Mix, Inc., began to work for Jerry as an independent mix designer.

II. *Present Proceedings.*

A. *District court.* In June 1996, VOCC, Jerry Van Oort, Casey Van Oort, and Jeff Wangsness filed this action against Nuckoll's claiming that Nuckoll's was in breach of the noncompete agreement by its continued failure to make the monthly installment payments. Nuckoll's asserted as an affirmative defense that Randall's employment constituted a material breach of the noncompete agreement between Nuckoll's and the plaintiffs, thereby excusing Nuckoll's refusal to make the monthly payments. Nuckoll's also filed a counterclaim based on VOCC's alleged breach of contract, seeking to recover the almost $90,000 Nuckoll's had already paid for the covenant not to compete.

The case proceeded to a bench trial. VOCC asserted that Nuckoll's was precluded from relitigating the issues previously determined in the injunction action: (1) that Randall had not violated the terms of his noncompete agreement with VOCC; and (2) that VOCC had satisfied its contractual obligation to enforce the Randall Van Oort covenant not to compete. The trial court ruled that issue preclusion was unavailable on the second issue because that issue was not material and relevant to the disposition of the prior action. As to the first issue, the trial court held that Nuckoll's did not have a full and fair opportunity to litigate this issue and therefore was not bound by the prior resolution of that issue.

After determining that issue preclusion did not apply, the court considered the merits of the parties' claims. The court held that Randall's employment at M. Peterson and V.O.C. Concrete through Central Redi–Mix, Inc. was a sham and in direct violation of his noncompete agreement with VOCC. The court also concluded that Jerry had breached his noncompete agreement with Nuckoll's by his reentry into the ready-mix business. Because the court concluded that this breach was material, the court held that Nuckoll's was excused from making payments under the noncompete agreement and, therefore, had not breached its agreement with VOCC and its shareholders. Accordingly, the court held there was no merit in the plaintiffs' breach-of-contract claim.

As for Nuckoll's counterclaim, the court concluded the evidence established VOCC's material breach of the contract.

The court held, however, that Nuckoll's had failed to prove any damages resulting from the plaintiffs' breach of the covenant not to compete. The court noted that VOCC remained obligated to pay the $11,700 sum it had previously agreed to pay as part of the prior settlement of the 1994 dispute.

B. *Court of appeals.* The plaintiffs appealed and the case was transferred to the court of appeals. The court of appeals held that issue preclusion applied and therefore the trial court erred in ruling that Randall had breached his noncompete agreement.[1] The court went on to hold, however, that Jerry Van Oort had materially breached the contract when he established his new ready-mix business. On the basis of these conclusions, the court of appeals awarded the plaintiffs the outstanding sums owed by Nuckoll's on its noncompete agreement with the plaintiffs. The court affirmed the award of $11,700 to Nuckoll's.

C. *Issues on further review.* We granted Nuckoll's petition for further review. We initially must decide whether the trial court correctly determined that the doctrine of issue preclusion does not apply to preclude Nuckoll's from proving that Randall violated his agreement not to compete. The next matter to be addressed is whether the trial court correctly ruled that the plaintiffs materially breached the noncompete agreement so as to excuse Nuckoll's nonperformance of this agreement.

Because Nuckoll's did not file a cross-appeal as to the trial court's refusal to award damages, we need not consider that aspect of the trial court's decision. In addition, VOCC claims no error on further review with respect to the district court's $11,700 judgment in favor of Nuckoll's.

III. *Scope of Review.*

 This breach-of-contract case was pled as a law action and tried to the court. We review for correction of errors of law. *See* Iowa R.App. P. 4. The trial court's findings of fact have the effect of a special verdict and are binding upon us if supported by substantial evidence. *See* Iowa Rs.App. P. 4, 14(f)(1). We view the evidence in a light most favorable to the trial court's judgment. *See Tim O'Neill Chevrolet, Inc. v. Forristall,* 551 N.W.2d 611, 614 (Iowa 1996).

IV. *Issue Preclusion.*

 Issue preclusion prevents the parties from relitigating issues previously resolved in prior litigation if certain prerequisites are established. *See West v. Wessels,* 534 N.W.2d 396, 397 (Iowa 1995). There are four well-established preliminary requirements for the use of issue preclusion:

"(1) The issue concluded must be identical;

(2) The issue must have been raised and litigated in the prior action;

(3) The issue must have been material and relevant to the disposition of the prior action; and

(4) The determination made of the issue in the prior action must have been necessary and essential to the resulting judgment."

*Brown v. Kassouf,* 558 N.W.2d 161, 163 (Iowa 1997) (quoting *Hunter v. City of Des Moines,* 300 N.W.2d 121, 123 (Iowa 1981)). If these prerequisites are met, the doctrine is available to any party to the prior litigation or those in privity to a party. *See Harris v. Jones,* 471 N.W.2d 818, 819

---

1. VOCC and the Van Oorts concede on appeal that Nuckoll's was not precluded from litigating the issue of VOCC's compliance with its enforcement obligation. The district court's determination of this issue in the injunction action was clearly not "necessary and essential to the resulting judgment" in that case.

*See Hunter v. City of Des Moines,* 300 N.W.2d 121, 123 (Iowa 1981) (stating that one requirement for issue preclusion is that "the determination made of the issue in the prior action must have been necessary and essential to the resulting judgment").

(Iowa 1991). One is in privity with a party if he or she "after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties, as by inheritance, succession or purchase." *Hunter,* 300 N.W.2d at 123 n. 3.

In the present case, Nuckoll's was not a party to the injunction action, nor was it in privity with a party to that action. We have stated that "it is a due process violation for a litigant to be bound by a judgment when the litigant was not a party or a privy in the first action and therefore never had an opportunity to be heard." *Harris,* 471 N.W.2d at 820 (citing *Parklane Hosiery Co. v. Shore,* 439 U.S. 322, 327 n. 7, 99 S.Ct. 645, 649 n. 7, 58 L.Ed.2d 552, 559 n. 7 (1979)). Notwithstanding this general statement, we have held that a nonparty has had an opportunity to be heard where the party against whom the doctrine of issue preclusion "is defensively invoked has a 'community of interest with, and adequate representation by, the losing party in the first action.'" *Opheim v. American Interinsurance Exch.,* 430 N.W.2d 118, 121 (Iowa 1988) (quoting *Clemmer v. Hartford Ins. Co.,* 22 Cal.3d 865, 151 Cal.Rptr. 285, 587 P.2d 1098, 1102 (1978)).

Here, VOCC and the Van Oorts claim that Nuckoll's had a community of interest with them in their enforcement action against Randall Van Oort because they "had the same interests in that case." On the other hand, Nuckoll's asserts the plaintiffs did not actually have the same interests as Nuckoll's, and that VOCC and the Van Oorts certainly did not adequately represent Nuckoll's interests in the enforcement action. The district court made the following findings on this disputed issue of fact:

Although [VOCC] brought the [enforcement] action against Randall, the principals of VOCC, Randall Van Oort and all witnesses were related. The principals of VOCC are two brothers and a sister, and a brother-in-law of the defendant Randall. Jerry Van Oort's view of the matter was that Randall should be allowed to earn a living by working for M. Peterson and Jerry was not concerned about the allegation of Randall's violation of his covenant. In fact all of the principals in [VOCC] had a motive to just go through the motions of enforcing the covenant. That would allow Randall to keep his job and would give the appearance that VOCC was in good faith attempting to enforce the covenant. The motive was there not to ask Randall the hard questions concerning his formation and alleged employment by Central Redi–Mix, Inc. and in fact the hard questions were not asked.... There is evidence in fact that Jerry Van Oort suggested that Randall use the Central Redi–Mix corporation as a defense to the claim of the violation of the covenant.

As the court's discussion makes clear, the district court found that VOCC and the Van Oorts did not have the same interests as Nuckoll's with respect to enforcement of Randall's covenant not to compete. It is also implicit in the court's decision that VOCC did not adequately represent Nuckoll's interests in the enforcement proceeding.

Based on the district court's express and implicit findings that the plaintiffs did not share a community of interest with Nuckoll's and did not satisfactorily represent Nuckoll's interests in the enforcement action, the district court refused to apply the doctrine of issue preclusion. Our review of the record reveals substantial evidence to support the district court's findings and, therefore, they are binding on appeal. *See* Iowa R.App. P. 14(f)(1). Given these findings, the district court correctly ruled that Nuckoll's was not precluded from litigating whether Randall violated his covenant not to compete.

V. *Did Randall Violate his Covenant not to Compete?*

The second issue raised by the plaintiffs on appeal is that "substantial evi-

dence showed that Randall was not in violation of the Randall noncompete agreement." The standard of review on appeal, however, is whether substantial evidence supports the finding actually made by the trial court, not whether substantial evidence would have supported a different finding. *See Tim O'Neill Chevrolet*, 551 N.W.2d at 614. Here the district court found that Randall was clearly in violation of the covenant when he worked for M. Peterson and V.O.C. Concrete. Substantial evidence supports this finding. In fact, the plaintiffs do not attempt to reconcile Randall's employment as an individual for M. Peterson with his contractual obligation not to compete. They do argue, however, that Randall's employment by Central Redi–Mix, Inc., which then subcontracted with M. Peterson and V.O.C. Concrete, was permissible under his noncompete agreement because that agreement allowed his employment "as agent or employee of Central Redi–Mix, Inc."

The trial court found that the Central Redi–Mix, Inc., to which the covenant referred, was a family-owned corporation. Thus, the court concluded, the exception to the covenant was consistent with the noncompete agreement because Randall's employment by the original Central Redi–Mix would not be in competition with VOCC; rather, he would be an employee of the VOCC principals. The trial court found, however, that Randall's employment through Central Redi–Mix did not fall within the exception to the covenant not to compete because Central Redi–Mix, Inc., as it subsequently existed, was a sham corporation.

The evidence supports these findings. Central Redi–Mix, Inc., as it existed at the time of Randall's employment by M. Peterson and V.O.C. Concrete, was a new corporation owned solely by Randall. No stock was ever issued. No tax returns were ever filed. The corporation did not collect or pay any employment taxes or social security. Randall did not observe corporate formalities, as evidenced by his allowance of a personal garnishment from M. Peterson's checks to the corporation. We conclude that substantial evidence supports the trial court's findings that the corporation was a sham and that Randall violated his covenant not to compete.

## VI. *Did the Trial Court Err in Dismissing the Plaintiffs' Breach–of–Contract Claim?*

■ The trial court dismissed the plaintiffs' breach-of-contract claim, finding that Nuckoll's discontinuance of its monthly payments was justified because the plaintiffs had materially breached the noncompete agreement. This ruling was based on Nuckoll's affirmative defense that Randall's competition in violation of his covenant not to compete also constituted a material violation of Nuckoll's contract with the plaintiffs, thereby entitling Nuckoll's to suspend its monthly payments.[2] The plaintiffs contend that even if they breached the noncompete agreement, the breach was only partial and did not excuse Nuckoll's total failure to make the required payments.

■ Nuckoll's affirmative defense rests on the theory that its performance was conditioned on the reciprocal performance of the plaintiffs to refrain from any compe-

**2.** The plaintiffs claim the court erred in finding a material breach because the evidence established that VOCC exercised good faith in enforcing Randall's noncompete agreement, and because Jerry's formation of V.O.C. Concrete was undertaken to mitigate his damages from Nuckoll's cessation of the monthly payments. Nuckoll's affirmative defense, however, was based only on Randall's competitive conduct. In fact, the other alleged breaches–the plaintiffs' failure to enforce Randall's cov-

enant and Jerry's formation of a competitive ready-mix business–had not yet occurred when Nuckoll's suspended its installment payments. Therefore, we need not concern ourselves with those breaches, as Nuckoll's affirmative defense must succeed, if at all, on the strength of its assertion that Randall's breach of his covenant not to compete was also a material breach of Nuckoll's noncompete agreement with the plaintiffs.

tition with Nuckoll's. We start our discussion, therefore, with a review of the legal principle underlying Nuckoll's affirmative defense, as stated in the Restatement (Second) of Contracts:

> [Subject to an exception not applicable here], it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time.

Restatement (Second) of Contracts § 237, at 215 (1981). We have already decided that the trial court did not err in finding that Randall violated his covenant not to compete. The plaintiffs agreed to incorporate Randall's covenant into their obligation to Nuckoll's under the Nuckoll's noncompete agreement. Therefore, the only remaining dispute with respect to the applicability of the quoted rule is whether Randall's breach, and hence the plaintiffs' breach, was material.

▮ To determine the materiality of a breach, the Restatement (Second) of Contracts

> looks to the injured party and asks to what extent that party will be deprived of the benefit it reasonably expected, account being taken of the possibility of adequate compensation for that part. It also looks to the other party--to the possibility that it will suffer forfeiture, to the likelihood that it will cure its failure, and to the degree that its behavior comported with standards of good faith and fair dealing. Most significant is the extent to which the breach will deprive the injured party of the benefit that it justifiably expected.

II E. Allan Farnsworth, *Farnsworth on Contracts* § 8.16, at 496–97 (2d ed.1998) (citing Restatement (Second) of Contracts § 241 (1981)) [hereinafter *"Farnsworth on Contracts "*].[3] We will discuss each factor separately.

Here, the sole purpose of the noncompete agreement requested by Nuckoll's was to prevent competition by VOCC and members of the Van Oort family, including Randall. This purpose was accomplished by the incorporation of Randall's covenant not to compete into the Nuckoll's noncompete agreement and by the plaintiffs' promises to enforce Randall's covenant and to refrain from competing themselves. Thus, the benefit reasonably expected by Nuckoll's was that it would not have *any* competition from VOCC or from any of the Van Oort siblings. It was deprived of this benefit by Randall's reentry into the ready-mix business. *Cf. West v. Jayne,* 484 N.W.2d 186, 189 (Iowa 1992) (holding that breach was not total so as to excuse other party's performance, where breach comprised a minor portion of promised performance). *See generally Uptown Food Store, Inc. v. Ginsberg,* 255 Iowa 462, 471, 123 N.W.2d 59, 65 (1963) (holding, where two partners signed a covenant not to compete, that acts of one partner may constitute a breach).

---

**3.** We deal here only with the circumstances under which a party may use self-help–suspension of performance–in order to obtain the bargained-for performance of the other party. Additional factors are relevant when determining whether a party is *discharged* from performing his remaining duties by the other party's uncured material failure to perform. *See* Restatement (Second) of Contracts § 242, at 244 (setting forth circumstances pertinent to determining when a party's remaining duties are discharged); *see also Union Story Trust & Sav. Bank v. Sayer,* 332 N.W.2d 316, 322 (Iowa 1983) ("the party claiming *discharge* of the contract must show the condi- tion breached constituted the entire agreed exchange by the other party, or was expressly recognized in the bargain as a condition for the other's performance" (emphasis added)). The plaintiffs do not argue that Nuckoll's attempted to terminate the noncompete agreement entirely. In fact, the record indicates the contrary. After the initial claim of competition was made by Nuckoll's in 1994, Nuckoll's eventually resumed payments when the dispute was resolved. There is nothing in the record to indicate that Nuckoll's would not have again resumed payments if the plaintiffs had enforced Randall's covenant not to compete.

The second relevant circumstance–the difficulty the injured party may have in proving the amount of loss with sufficient certainty–also supports a finding that Randall's breach was material. Proof of damages caused by the breach of a covenant not to compete is difficult. *See Orkin Exterminating Co. v. Burnett*, 160 N.W.2d 427, 430 (Iowa 1968) (noting that " 'the measure of damages in an action for the breach of an agreement by the seller not to reenter business in competition with the buyer is usually difficult of exact computation' " (quoting *Gallagher v. Vogel*, 157 Neb. 670, 61 N.W.2d 245, 250 (1953)).

The next factor is whether the plaintiffs will suffer a forfeiture because they have prepared or performed based on their expectation of performance by Nuckoll's. *See* Restatement (Second) of Contracts § 241 cmt. d, at 239. We think this factor is not implicated because the plaintiffs have not contended that they expended moneys or effort in expectation of payment by Nuckoll's. To the contrary, all the plaintiffs needed to do to receive Nuckoll's installment payments was to refrain from competing, in other words, do nothing.

Turning to the next circumstance, to the extent that it is reasonably certain that the nonperforming party will cure his breach despite his current nonperformance, we consider the breach less material. *See id.* § 241 cmt. e, at 241. That is because one justification for allowing a party to suspend performance is that withholding further performance may be a means of securing future performance by the breaching party. ` *See id.* Here there was no indication that Randall would cease his competition with Nuckoll's in the future. In fact, Randall went so far as to create a sham corporation to avoid his obligation not to compete. Because it was unlikely that Randall would voluntarily comply with his contractual obligation, this factor supports a finding that Randall's actions were a material breach.

Finally, the court looks to the good faith and fair dealing of the breaching party.

The plaintiffs offer no justification for Randall's employment, as an individual, by M. Peterson and do not even claim that it was permissible under his covenant not to compete. We conclude that Randall's violation of his covenant was not consistent with standards of good faith and fair dealing.

In summary, the circumstances pertinent to determining whether a breach is material support the conclusion that Randall's reentry into the ready-mix business was a material breach of the Nuckoll's noncompete agreement. Therefore, Nuckoll's was justified in suspending its performance under the contract until such time as the plaintiffs enforced Randall's covenant not to compete. Accordingly, Nuckoll's did not breach the agreement when it stopped making the monthly payments and, therefore, the trial court did not err in dismissing the plaintiffs' breach-of-contract action against Nuckoll's.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**