# United States Court of Appeals

### For the Eighth Circuit

_____

No. 17-1451

_____

Ryan Data Exchange, Ltd.; Rydex Technologies, LLC, doing business as Rydex

*Plaintiffs - Appellees*

v.

Graco, Inc.

*Defendant - Appellant*

_____

No. 17-1746

_____

Ryan Data Exchange, Ltd.; Rydex Technologies, LLC, doing business as Rydex

*Plaintiffs - Appellants*

v.

Graco, Inc.

*Defendant - Appellee*

_____

No. 17-1772

_____

Ryan Data Exchange, Ltd.; Rydex Technologies, LLC, doing business as Rydex

*Plaintiffs - Appellees*

v.

Graco, Inc.

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: September 26, 2018
Filed: January 10, 2019

_____

Before COLLOTON, BEAM, and GRASZ, Circuit Judges.

_____

BEAM, Circuit Judge.

After a jury found in favor of Ryan Data Exchange (Rydex) in its breach of contract claim against Graco,[1] and against Graco in its counterclaims against Rydex, Graco sought to set the jury's verdict aside, renewed its motion for judgment as a matter of law, and moved for new trial, all of which the district court[2] denied. The district court further awarded $204,221.50 in attorney's fees to Rydex. Graco appeals. Rydex also appeals, challenging the district court's reduction of its requested amount of attorney's fees. We affirm.

_____

[1] The district court disposed of Rydex's claim for patent infringement against Graco ruling on a motion in limine prior to trial.

[2] The Honorable James E. Gritzner, United States District Judge for the Southern District of Iowa.

## I.    BACKGROUND

On September 13, 2005, Rydex and Graco entered into a Settlement and License Agreement (Agreement) in which Rydex granted Graco a patent license.  In the instant action, the parties litigated three provisions of the Agreement at trial:  (1) the provision wherein Rydex granted Graco an exclusive license to make, have made, use, and sell articles covered by the patent (§ 3.0); (2) the Agreement's provision that if a third party were to infringe the patent, Rydex would have the initial choice and obligation to prosecute the infringement (§ 11); and (3) a provision stating that Graco would pay Rydex royalties of 5% of the net selling price of its product using the patent (§ 4.1).

Relevant to the instant litigation, in 2011, years after the parties entered into the Agreement,  Rydex initiated a lawsuit alleging patent infringement against Badger Meter, Inc., Balcrank Corp., and Lincoln Industrial Corp. (collectively, Badger).  The district court found, and the trial evidence revealed, a unique set of circumstances regarding Badger's infringement, in that at the time Rydex and Graco entered into the 2005 Agreement, both parties were aware that Badger was allegedly already infringing the patent, and yet the Agreement purported to give Graco an exclusive right to the patent.  In 2012 Rydex and Badger filed a stipulation of dismissal and agreed that Rydex's claims and Badger's counterclaims in the matter would be dismissed with prejudice.  This dismissal between Rydex and Badger is the source of Graco's claim against Rydex for failure to prosecute infringement under the Agreement.

Graco stopped paying royalties to Rydex as of December 31, 2013, as Graco believed that Rydex had breached the Agreement's exclusivity provision and the patent infringement prosecution provision (§§ 3 and 11) by allowing Badger to continue its infringement and by failing to fully prosecute the infringement claim against Badger.  In May 2014, Rydex filed the instant complaint alleging breach of contract and patent infringement by Graco.  Graco countersued, also alleging breach

of contract and seeking declaratory judgments that the patent was invalid and that Rydex had lost its right to receive royalty payments under the Agreement due to its alleged breaches.

A jury trial was held in November 2016 on all of the contract claims then pending. During trial Graco moved pursuant to Rule 50(a) for judgment as a matter of law at the close of Rydex's case-in-chief, claiming in part that it had established through cross-examination that Rydex had breached its duty under the Agreement to prosecute the Badger litigation, and that Rydex had breached the exclusivity provision of the Agreement. In ruling on Graco's motions from the bench, the district court held as a matter of law that Rydex *had* breached its duty to prosecute infringement as of the date of the dismissal of the Badger litigation in 2012, and that Rydex *was* in breach of the exclusivity provision of the Agreement from the date of the dismissal of the Badger litigation until the expiration of the patent on March 10, 2015. Accordingly, the court granted Graco's Rule 50 motion to that extent. There was no ruling by the court as to whether Rydex breached the Agreement by failing to provide Graco an exclusive license from the date the parties entered into the Agreement in 2005 until the dismissal of the Badger litigation in 2012.

In that same colloquy, the district court additionally ruled as a matter of law that by way of Rydex's dismissal of the case against Badger and by failing to fully prosecute the matter, Rydex necessarily created an implied license (i.e., there existed a reasonable inference that Rydex consented to Badger's use of the patent), at the very least, with regard to Badger's past infringement, at the time of the dismissal of the litigation against Badger. In a seeming attempt to correct any potential misunderstanding of its rulings, the district court clarified that despite the terms of the Agreement, the record was clear that both parties operated under the Agreement with the knowledge and understanding that there was some threat to either the validity of the patent altogether, or the existence of potential infringing third parties, over a period of several years before Rydex ever initiated the action against Badger. Because of that knowledge on both sides, the court held it could not rule as a matter of law on

the issue of Rydex's alleged breach of the Agreement at any time prior to the dismissal of the Badger litigation. The court held that particular issue of contract interpretation and breach was a matter for the jury.

The parties discussed throughout, and after trial, how to "package" this case for the jury in light of the court's Rule 50 rulings. Accordingly, the case was presented to the jury for very particular determinations with a verdict form consisting of five narrow questions for the jury. Instruction 7, titled "Elements of Breach of Contract," stated the elements required to prove a breach of contract under Iowa law, and also instructed the jury regarding the district court's prior grant of judgment as a matter of law in favor of Graco:

> Regarding the Rydex Parties' breach of contract claim, it is for you to decide whether Graco breached the License Agreement by failing to pay royalties to the Rydex Parties for the period ending December 31, 2013, through the date of the expiration of the '180 patent on March 10, 2015.

> Regarding Graco's breach of contract claim, the Court has found as a matter of law that the Rydex Parties were not required to commence an infringement action prior to the filing of the Badger Litigation. The Court has also found as a matter of law that the Rydex Parties were in breach of the duty to prosecute infringement as of the date of the dismissal of the Badger Litigation on August 15, 2012. The Court has further found as a matter of law that the Rydex Parties were in breach of the exclusivity provision of the License Agreement from the date of the dismissal of the Badger Litigation on August 15, 2012, until the expiration of the '180 patent on March 10, 2015. You must accept these facts as having been proved. It is for you to decide whether the Rydex Parties were in breach of the exclusivity provision of the License Agreement from the date the parties entered into that license agreement on September 13, 2005, through the dismissal of the Badger Litigation on August 15, 2012.

Instruction 8 informed the jury as to how to interpret the contract, including how to consider the intent of the parties gleaned from surrounding circumstances and

the contract language itself, how to give meaning to the contract language, and how to handle potentially ambiguous language, etc. Additionally, Instruction 11 instructed the jury on the definition of an implied license, and specifically instructed that "the Court has ruled an implied license was created as to the Badger litigation when that case was dismissed with prejudice on August 15, 2012, as to any Badger use of the '180 Patent prior to that date." There was no direct discussion of materiality in the jury instructions or verdict form.

Upon deliberation, the jury found, first, that Rydex proved at trial that Graco breached the Agreement by failing to pay royalties to Rydex from December 31, 2013, through the date of the expiration of the patent on March 10, 2015; and awarded Rydex $313,000 in damages. Next, in response to the query regarding the amount of damages due *Graco* as a result of *Rydex's* breaches already determined by the court as a matter of law and laid out for the jury in Instruction 7 (i.e., its breach of duty to prosecute infringement and the breach of the exclusivity provision of the Agreement at the time of the Badger litigation dismissal), the jury answered "$0.00." As to the question to the jury as to whether *Graco* proved that *Rydex* breached the Agreement by failing to provide Graco an exclusive license from the date the parties entered into the Agreement on September 13, 2005, until the dismissal of the Badger litigation on August 15, 2012, the jury answered "no."

Post-trial, Graco, pursuant to Rule 50(b), renewed its motion for judgment as a matter of law, asking the district court to grant judgment in its favor and to rule that Rydex was not entitled to damages given the court's earlier ruling that Rydex breached the Agreement. In its order on the post-trial requests, the district court made clear that although it *had* determined as a matter of law that Rydex breached the Agreement, it *had not* made any determination as to materiality–the legal finding the court held was necessary in order to preclude Rydex's recovery of the royalty payments. The court clarified that the materiality of a breach is a factual issue for the jury and reviewed the instructions given the jury, the evidence presented at trial, and the verdict itself to arrive at its determination that the jury necessarily determined that Rydex had *not*

-6-

materially breached the Agreement, as Rydex's breaches did not deprive Graco of a benefit it justifiably expected. Too, the court additionally noted that evidence of Graco's continued use of the patent *after* Rydex's breaches in 2012 supported the jury's verdict, as Graco's continued exploitation of its license after what it now claims was a breach of the terms of the Agreement, precluded Graco's nonperformance in withholding royalty payments from Rydex. The district court likewise denied Graco's motions to alter or amend the judgment, its motion for new trial, and its motion for remittitur upon similar reasoning. The district court subsequently awarded attorney's fees. These appeals ensued.

## II.    DISCUSSION

We review the district court's denial of Graco's motion for judgment as a matter of law de novo, viewing the record in a light most favorable to the verdict. Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc., 908 F.3d 313, 322 (8th Cir. 2018). "We review a motion for new trial for abuse of discretion." Washington v. Denney, 900 F.3d 549, 558 (8th Cir. 2018) (quoting Smiley v. Gary Crossley Ford, Inc., 859 F.3d 545, 552 (8th Cir. 2017)). "[T]he law places a high standard on overturning a jury verdict because of the danger that the jury's rightful province will be invaded when judgment as a matter of law is misused." Id. (alteration in original) (quoting Bavlsik v. Gen. Motors, LLC, 870 F.3d 800, 805 (8th Cir. 2017), cert. denied, 138 S. Ct. 1991 (2018)). "We are hesitant 'to interfere with a jury verdict,' as reflected in the 'analysis for considering renewed JML motions.'" Id. (quoting Bavlsik, 870 F.3d at 805, cert denied, 138 S. Ct. 1991 (2018)).

> In ruling on a motion for [judgment as a matter of law], the district court must (1) consider the evidence in the light most favorable to the prevailing party, (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party, (3) assume as proved all facts that the prevailing party's evidence tended to prove, and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved. That done, the court must

then deny the motion if reasonable persons could differ as to the conclusions to be drawn from the evidence.

Id., 900 F.3d at 558-59 (alteration in original) (quoting Haynes v. Bee-Line Trucking Co., 80 F.3d 1235, 1238 (8th Cir. 1996)).

## A.     Materiality Requirement under Iowa Contract Law

On appeal, Graco argues, as it did to the district court in its Rule 50(a) and 50(b) motions, that under Iowa law when a party breaches a contract it cannot enforce the terms of the agreement or recover any damages under a breach of contract claim. Graco focuses on the element in Instruction 7–that to establish a breach of contract, the party alleging breach must prove that it has done what the contract requires–claiming that because it is undisputed that Rydex breached two provisions of the Agreement (its duty to provide exclusivity, and its duty to prosecute the infringement), and that it did so *prior* to Graco's alleged breach on December 31, 2013, (when it stopped making royalty payments), Rydex is not entitled to damages because it failed to prove it had "done what the contract requires." Accordingly, Graco claims that the district court's finding of Rydex's breaches should have precluded recovery for Rydex under Iowa law. Rydex counters that under Iowa law, for a breach to excuse the performance of the non-breaching party and preclude recovery, the breach must be material.

This issue of materiality, as well as Graco's choice to continue receiving benefits under the Agreement despite Rydex's breaches, were raised at myriad times throughout this litigation including, but not limited to, the parties' pre-trial summary judgment filings, during trial by the district court and the parties in the discussion regarding Graco's motion for judgment as a matter of law at the close of Rydex's case-in-chief, and again post-trial in Graco's renewed motions. Too, on multiple occasions, the district court discussed the unusual set of circumstances resulting from the facts presented in this case. We agree with the court's assessment. Despite the terms of the

-8-

Agreement, the record established that from the outset the parties were operating under this Agreement with the knowledge and understanding that there was some threat to either the validity of the patent or the existence of potential infringing third parties over a period of several years before the Badger litigation ensued, Rydex breached the Agreement when it failed to fully prosecute the Badger litigation matter after it filed suit, and there was a continuing period of time when Graco stopped making royalty payments and yet functioned under the Agreement with regard to the use of the patent. These various points in time during the relationship of these contracting parties were delineated by the district court's rulings, drove the parties' closing arguments to the jury, and were the focus of the verdict form adopted by the parties.

Under Iowa law, only a material breach could excuse Graco's nonperformance. Kelly v. Iowa Mut. Ins. Co., 620 N.W.2d 637, 641 (Iowa 2000); Van Oort Constr. Co. v. Nuckoll's Concrete Serv., Inc., 599 N.W.2d 684, 692 (Iowa 1999). Indeed, in Van Oort, a similar question presented itself when a party to a contract discontinued making agreed-upon payments based on its belief that the other contracting party had breached, thereby excusing performance. 599 N.W.2d at 687-88. Thus, the only remaining dispute for the court was whether the breach at issue was material. Id. at 692. "[Subject to an exception not applicable here], it is a condition of each party's remaining duties to render performances to be exchanged under an exchange of promises that there be no uncured material failure by the other party to render any such performance due at an earlier time." Id. (alteration in original) (quoting Restatement (Second) of Contracts, § 237, at 215 (1981)). In Van Oort, the court, reviewing materiality as a mixed question of law and fact, held that the breach at issue *was* material and thus the party was justified in suspending its performance under the contract until such time when the breach was cured. 599 N.W.2d at 693.

Applying Iowa law in the instant case, the district court's finding that Rydex had, indeed, breached the contract did not end the inquiry as Graco now argues. Rather, it is ultimately the materiality of the breaches that was determinative of the

issue and, indeed, is necessarily the reason the matters were presented to the jury despite the district court's previous rulings. Although the jury was not presented with an instruction on materiality, given the parties' discussions throughout the trial, the district court's rulings on the various motions throughout these proceedings, the evidence presented, the arguments made to the jury, and the jury instructions read in their entirety, the verdict can be characterized as one determining materiality. The materiality concept was front and center in Rydex's closing arguments; and in fact, the parties discussed issues obviously addressing materiality throughout trial and submitted the district court's holdings regarding Rydex's breaches to the jury, indicating in fact that those holdings did not carry the day in the contract dispute. The jury's conclusion that Graco be awarded $0.00 in damages as a result of Rydex's breaches, viewed under our favorable standard of review lens, indicates the jury did not find a material failing on the part of Rydex.[3]

While Graco argues that the findings by the district court as a matter of law resolve this case in its favor, it is the jury's determinations in the face of these rulings that determinatively resolve the materiality issue. These factual determinations were uniquely in the jury's purview and will not be upset on appeal. There was no error.[4]

---

[3]*A fortiori*, even with the district court's determination as a matter of law that Rydex gave Badger an implied license to this patent from the date of the Agreement until the date the Badger litigation was dismissed, the jury still held that Rydex did *not* breach the Agreement's exclusivity provision. As to that particular breach of contract claim, the matter of materiality does not arise because the jury found no breach in the first instance.

[4]Given our de novo review and finding no error in the district court's denial of Graco's motion for judgment as a matter of law, it is axiomatic the district court did not abuse its discretion in denying Graco's motion for new trial for the same reasons. Despite Graco's insistence the jury should have ruled differently, there was no miscarriage of justice. Washington, 900 F.3d at 558.

## B.  Jury Instructions

Graco additionally argues that the district court erred by failing to give additional jury instructions it requested at conference, particularly its proffered "conditions precedent-definition," which would have included directions regarding materiality, and a "duty of good faith and fair dealing" instruction. This court's review is limited on jury instructions, reviewing only whether, taken as a whole, the instructions given fairly and adequately represented the evidence and applicable law in light of the issues presented to the jury in a particular case. Zebley v. Heartland Indus. of Dawson, Inc., 625 F.3d 449, 455 (8th Cir. 2010). "[A] district court's decision to reject a proposed jury instruction also is reviewed for an abuse of discretion." Retz v. Seaton, 741 F.3d 913, 919 (8th Cir. 2014). We reverse "when the errors misled the jury or had a probable effect on the jury's verdict." United States v. Thompson, 686 F.3d 575, 579 (8th Cir. 2012) (quoting United States v. Slagg, 651 F.3d 832, 848 (8th Cir. 2011)). "A district court has broad discretion in instructing the jury, and jury instructions do not need to be technically perfect or even a model of clarity." United States v. Garcia-Gonon, 433 F.3d 587, 591 (8th Cir. 2006) (quoting United States v. Gianakos, 415 F.3d 912, 920 (8th Cir. 2005)).

Graco did not object to the district court's exclusion of the two particular instructions now discussed. Even if it had, after reviewing the arguments presented on appeal in light of the manner in which this case was submitted to the jury, the instructions on whole were an adequate statement of the law, reflected the theories of recovery argued to the jury, and fairly and adequately represented the evidence and applicable law. Although a particular instruction regarding materiality was not presented to the jury, the arguments made to the jury accurately reflected Iowa contract law and any error in omitting such an instruction, were we to assume error occurred at all, did not mislead the jury or effect the jury's verdict in this instance.

-11-

## C.     Attorney's Fees

There are two standards of review at play on the issue of attorney's fees.  On the one hand, this court reviews de novo a district court's "prevailing party" determination in a contractual context.   Johnson Reg'l Med. Ctr. v. Halterman, 867 F.3d 1013, 1020 (8th Cir. 2017).  On the other hand, the court of appeals reviews an award of attorney's fees for an abuse of discretion, which review occurs when the district court commits a clear error of judgment in weighing the relevant factors.  Id.; FutureFuel Chem. Co. v. Lonza, Inc., 756 F.3d 641, 649-50 (8th Cir. 2014).  So, the determination as to who prevails is reviewed de novo and "how much" is reviewed for an abuse of discretion.

The award of attorney's fees in this case arises from the Agreement itself, which provided that "[i]f litigation under this Agreement ensues because of a material breach, the prevailing party shall be awarded its reasonable attorney's fees."  "[S]tate law governs the availability of attorney fees in diversity cases where no conflicting federal statute or court rule applies."  Burlington N. R.R. Co. v. Farmers Union Oil Co. of Rolla, 207 F.3d 526, 534 (8th Cir. 2000).  The Iowa Code provides:  "When judgment is recovered upon a written contract containing an agreement to pay an attorney fee, the court shall allow and tax as a part of the costs a reasonable attorney fee to be determined by the court."  Iowa Code Ann. § 625.22.  An applicant for attorney's fees has the burden to prove that the services were reasonably necessary and that the charges were reasonable in amount.  Ales v. Anderson, Gabelmann, Lower & Whitlow, P.C., 728 N.W.2d 832, 842 (Iowa 2007).  In making this reasonableness determination, the district court considers the time necessarily spent, the nature and extent of the service, the amount involved, the difficulty of handling and importance of the issues, the responsibility assumed and results obtained, the standing and experience of the attorney in the profession, and the customary charges for similar services. Id.  "Reductions may be made . . . for such things as partial success, duplicative hours or hours not reasonably expended."  Boyle v. Alum-Line, Inc., 773 N.W.2d 829, 833 (Iowa 2009) (quoting Sherman v. Kasotakis, 314 F. Supp. 2d 843, 881 (N.D. Iowa 2004)).  Reductions may also be made for "block billing" or poor

record-keeping.  Sherman, 314 F. Supp. 2d at 881.  In the end, however, the award of attorney's fees rests in the sound discretion of the trial court.

After trial, the district court determined that Rydex was the prevailing party and, based upon its analysis of the bills presented, awarded $204,221.50.  In its reasonableness determination, the district court attributed the reduction of the remaining attorney's fees to its

> inability to discern separation between the infringement and contract claims, lack of sufficient billing records to precisely grasp the nature of work done, [Rydex's] success solely on a portion of the contract claim, the amount of the judgment in relation to amounts claimed, the complexity of the case which was essentially a straight forward contract dispute, and the Court's understanding of customary charges in the jurisdiction, in search of the 'reasonable attorney's fee' contemplated by the license Agreement.

Reviewing the district court's analysis of the Agreement as to attorney's fees in light of the filings by the parties and briefing on appeal as well as the jury verdict, we agree with the court's determination that Rydex prevailed in this action and find no clear error of judgment in the court's application of Iowa law in arriving at the adjusted figure awarded.  Contrary to Rydex's claim, nothing in our review of the record indicates the district court applied an arithmetically simplistic fee or mathematical formula, nor are we persuaded by Graco that a further reduction is warranted.  Too, we decline the invitation to apply a cap based on the alleged contingent fee agreement between Rydex and its counsel as advanced by Graco.  While the record contains an acknowledgment that such an agreement exists, Iowa courts have not yet spoken on the matter as presented.  Applying a review of reasonableness as our guide, there was no abuse of discretion and the attorney's fees awarded stand as calculated.

## III.   CONCLUSION

For the reasons stated herein, we affirm.

_____