# IN THE COURT OF APPEALS OF IOWA

No. 23-0990
Filed March 19, 2025

**OSCAR RECIO and MARIA RECIO,**
        Plaintiffs-Appellants,

**vs.**

**FREDERICK M. FRIDLEY, D.L. PETERSON TRUST, SECURITAS SECURITY SERVICES USA, INC., and DOE CORPORATION,**
        Defendants-Appellees.
_____

        Appeal from the Iowa District Court for Warren County, Thomas P. Murphy, Judge.

        Plaintiffs appeal the district court's order enforcing a settlement agreement and dismissing their suit.  **AFFIRMED**.

        Christopher P. Welsh of Welsh & Welsh, PC, LLO, Omaha, Nebraska, for appellants.

        Daniel R. Sarther (pro hac vice) of Christensen HSU Sipes, LLP, Chicago, Illinois, and Spencer S. Cady of Nyemaster Goode, P.C., Des Moines, for appellees.

        Considered by Badding, P.J., Langholz, J., and Potterfield, S.J.*

        *Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2025).

**LANGHOLZ, Judge.**

Oscar and Maria Recio's attorney negotiated a $125,000 settlement on their claims arising from a van crash caused by Frederick Fridley. But before the Recios signed a release, they hired a new attorney, claimed they never authorized their first attorney to enter into the settlement agreement, and sued Fridley.[1] Fridley moved to enforce the settlement agreement—asking the court to find that the Recios settled their claims and thus to dismiss the suit. After a hearing—at which neither party called any witnesses—the court found that the parties had reached a settlement agreement, reasoning that the Recios failed to rebut the presumption that their attorney had authority to settle with clear and satisfactory proof.

The Recios appeal, arguing that the court improperly granted summary judgment on Fridley's motion when a genuine issue of material fact existed as to whether their first attorney had authority to settle their claims. But the ruling they appeal is not a summary-judgment ruling. Without objection from the Recios, the court decided this preliminary factual issue—finding based on the evidence before it that the parties reached a settlement agreement. So any error in this procedure is not preserved. And reviewing for corrections of errors at law, we hold that the court's finding is supported by substantial evidence. Given the other evidence and the presumption of attorney authority, we cannot say as a matter of law that the court was required to believe a single affidavit. We thus affirm the district court's order enforcing the settlement agreement and dismissing the Recios' suit.

---

[1] The Recios also sued D.L. Peterson Trust, Securitas Security Services USA, Inc., and Doe Corporation, alleging that Fridley was employed by one of these businesses and that D.L. Peterson Trust owned the van driven by Fridley in the accident. All remain as appellees too. But for readability, we refer only to Fridley.

## I.    Factual Background and Proceedings

On December 7, 2020, Fridley dropped his cell phone while driving on an entrance ramp to Interstate 80 and crashed into a semi-truck parked on the ramp. Oscar Recio was under the parked truck performing repairs. And the crash caused "severe and permanent injuries and damages" to Recio and his truck.

Recio retained an attorney, Cesar Palma, who eventually began negotiating a settlement of the claims arising from the crash with a claims examiner for Fridley's insurer. In October 2021, Palma sent the claims examiner a settlement demand for "the policy limits." After apparently receiving no response to the demand by Palma's deadline, another employee of Palma's law firm repeatedly followed up by email until the claims examiner responded in mid-January, "I have obtained authority, we would like to offer your client $105,000 for his injuries, thank you." Four days later, Palma responded, "We would like to bring this to a resolution as well. Our client will consider getting this case resolved for $425,000.00, please let me know by Friday at noon."

Two minutes later, the claims examiner replied "I am sorry there [is] no way I can get even close to that." Minutes after that, Palma wrote, "Give me a counter offer and I will get with my client. I have room to negotiate." And the negotiation then continued for the next fifteen minutes. The claims examiner first shared why he did not value the case higher, but still offered an increase to $108,000. Palma countered at $250,000. The claims examiner explained, "I don't have much more to move, $110,000.00." Palma finished out this round replying, "In order to get this done, my client will consider 150,000.00 let me know by Friday or sooner if you can."

About two weeks later, apparently having heard nothing more, Palma wrote the examiner again, "I just spoke with my client and he asked me to file suit. I never heard anything back from you on our last offer. Please let me know. Thank you." The claims examiner replied the next day, "I am sorry, I was obtaining more authority from my client. I can get to $116,000.00, if you think it will get it done." Palma answered later that morning, "I would like to get this done today so I don't have to file suit. Can we meet at 130k, if so please send me a release. Thank you." Minutes later, the claims examiner responded, "My max authority is $120,000. If you want more, I need to request from my client." And Palma curtly replied, "125,000 and send me a release. Thank you."

The claims examiner immediately clarified, "I need more authority, do you want me to go to my client or send you a release for $120,000?" And Palma confirmed, "Get authority for 125 and send me a release. Thank you." Four hours later, the claims examiner sent a final email, "Enclosed is your release." Attached to the email was a one-page general release prepared for Recio to sign, releasing all claims arising from the crash in exchange for $125,000.

Recio never signed the released. And at some point, he switched attorneys. His new attorney eventually reached back out to the claims examiner. In a July 2022 email, the new attorney wrote, "As previously discussed, Mr. Recio did not give any authority to his previous attorney to settle this matter for the $125k. Please let me know if you will be reevaluating once he has completed his [traumatic brain injury] treatment and making a new offer." A month later, the attorney sent the claims examiner a copy of Recio's comprehensive neurological evaluation and asked when the examiner would "have some time to discuss this claim."

On December 2, 2022, the Recios filed this suit against Fridley seeking damages arising from the crash. A few days later on December 7—exactly two years from the date of the crash—the claims examiner responded to the attorney's August email, asking "do you have a[] demand yet?"[2] Later that morning, the attorney replied "We do not have a demand ready yet. Do you have a new offer to convey to the client?" And the claims examiner replied, "I know our last offer was $125,000, we did not get a demand from you."

In March 2023, Fridley filed a motion to enforce settlement, asking the district court to enter an order finding that Recio had agreed to release all the claims in the suit for $125,000 and dismissing the case. Fridley submitted as exhibits the settlement demand and emails showing the negotiations between Palma and the claims examiner highlighted above.

The Recios resisted, arguing that the court should deny the motion and "allow the litigation to continue" because Palma lacked "the authority to negotiate, make counteroffers, or resolve Mr. Recio's claim." They submitted as exhibits the emails between their new attorney and the claims examiner and an affidavit by Oscar Recio describing his knowledge of the settlement discussions:

> At no time did Mr. Palma inform me that a demand letter had been sent to the insurance company to try and settle the case. At no time did Mr. Palma get my authority to accept, reject, or negotiate any offer on my behalf. At no time did Mr. Palma convey any offers or numbers that the insurance company was sending over. At no time did Mr. Palma get my authority to make counteroffers on my behalf. At no time was I informed of any settlement talks or negotiations for my case. I have never signed any release agreeing to accept $125,000.00 to settle my case and I have never given verbal or written approval to accept $125,000.00 to settle my case.

---

[2] The record is silent whether the claims examiner knew of the filed suit when writing. The Recios served one of the defendants the next day, December 8.

In the affidavit, Recio also explained that he switched attorneys "due to lack of communication," and it was his new attorney that told him "Mr. Palma asked the insurance company for a release for $125,000.00 and that Mr. Palma had been negotiating and making counteroffers without my knowledge and authority."

The court set the motion for a hearing in an order that noted, "This matter is set for 30 mins on a Court Service Day. If more time is needed, the parties shall contact the Court immediately." The Recios did not request more time. But their attorney did ask for—and was granted—permission to participate in the hearing by videoconference. Then again, the day before the hearing, the court emailed the attorneys for all parties: "Tomorrow there is a hearing on the motion to enforce. If you plan on presenting testimony, we need to continue it to a non-court service day. Tomorrow, we only have time for short arguments. Please let us know." And the attorneys told the court they did not intend to present testimony.

After the hearing, the district court granted Fridley's motion. The court found that the emails between Palma and the claims examiner "clearly establish" that the claims examiner "accepted Mr. Palma's demand to settle the case for $125,000." It reasoned that such settlement agreements "are not required to be in writing" and that here "[t]here were few details to resolve, the amount was not extraordinary for a personal injury settlement, the exchange of a release for funds is not overly technical, and the language of the settlement was clear and common." The court also found that Palma acted with authority because the Recios had failed to rebut the presumption that an attorney acts with his client's authority with clear and convincing proof. The court found that the affidavit alone was "not clear and

convincing evidence," reasoning that "the Recios opted not to present testimony. There is no evidence that Mr. Palma is subject to an ethics complaint. There was no submission from Mr. Palma. The court cannot find, without serious or substantial uncertainty, that Mr. Palma acted without authority." (Cleaned up.) Thus, the court ordered that the "settlement agreement in the amount of $125,000 is by this order enforced" and that the Recios' claims "shall be dismissed upon payment of $125,000."

The Recios moved to reconsider the order enforcing the settlement agreement under Iowa Rule of Civil Procedure 1.904(2). They largely reiterated the arguments from their resistance and urged that the court should reconsider and find that "Mr. Palma acted *without* Mr. Recio's authority." They did not argue that the court should not have resolved the factual dispute about authority at all or request that the matter instead be submitted to a jury. The court summarily denied the motion. And the Recios now appeal.

## II.     The District Court's Role in Enforcing Settlement Agreements

On appeal, the Recios argue that the district court erred in enforcing the settlement agreement because they generated a material fact dispute about whether Palma had their authority to settle the case. This argument rests on the premise that the court should have applied the summary-judgment standard in ruling on Fridley's motion. *See* Iowa R. Civ. P. 1.981. And they seek support for this premise from cases in which disputes about enforcing settlement agreements have been litigated at summary judgment. *See, e.g.*, *O'Reilly Auto Enters. v. Badia*, No. 21-1871, 2022 WL 17829370, at *2–3 (Iowa Ct. App. Dec. 21, 2022). But the Recios' premise is faulty—the court did not grant summary judgment.

To dispel the confusion, we start with the broader legal context surrounding enforcement of settlement agreements. "The law favors settlement of controversies." *Wright v. Scott*, 410 N.W.2d 247, 249 (Iowa 1987). Agreements to settle a legal controversy are "essentially contractual in nature." *Id.* So like other contracts, they can be enforced through an independent contract suit. *See, e.g.*, *Dillon v. City of Davenport*, 366 N.W.2d 918, 920–21 (Iowa 1985) (considering appeal from a suit seeking specific performance of an agreement to settle workers' compensation claim). Such a suit could progress like any other to resolution at summary judgment or trial depending on the disputed issues and litigation strategies of the parties. *See, e.g.*, *id.* at 921 (reviewing order for specific performance after trial to the court); *O'Reilly Auto Enters.*, 2022 WL 17829370, at *1–3 (reversing order granting summary judgment to party seeking to enforce settlement agreement because genuine dispute of material fact existed about attorney's authority to settle the claims).

But district courts also "have authority to enforce settlement agreements made in a pending case." *Wende v. Orv Rocker Ford Lincoln Mercury, Inc.*, 530 N.W.2d 92, 94 (Iowa Ct. App. 1995); *see also, e.g.*, *Est. of Cox by Cox v. Dunakey & Klatt, P.C.*, 893 N.W.2d 295, 300–01 (Iowa 2017); *Gilbride v. Trunnelle*, 620 N.W.2d 244, 249 (Iowa 2000); *Cunningham v. Iowa-Ill. Gas & Elec. Co.*, 55 N.W.2d 552, 554–55 (Iowa 1952). Sometimes a claim that the case has been settled is added to the case through a pleading. *See, e.g.*, *Cunningham*, 55 N.W.2d at 553 (noting that the "claimed settlement was pleaded in a separate division of an answer filed by the defendant"). Other times, even though there is no rule expressly authorizing it, the issue has been brought before the court with a motion

to enforce the settlement agreement.[3]  *See, e.g.*, *Wende*, 530 N.W.2d at 94, n.1; *Cox*, 893 N.W.2d at 300.

Whether introduced to a pending case by a pleading or motion, the issue can be considered in multiples ways.  If there is no material fact dispute, it may be resolved by the court through summary judgment.  *See Gilbride*, 620 N.W.2d at 249–51.  But if there is a fact dispute, the issue must be resolved by the finder of fact—either by "the court or jury as an additional claim" when deciding the rest of "the original action" or "by the court or jury in a separate hearing."  *Wende*, 530 N.W.2d at 94; *see also Cunningham*, 55 N.W.2d at 554 (affirming court's finding that case was settled after the issue was submitted to the court with the apparent agreement of the parties); *In re Est. of Kinzenbaw*, No. 15-0981, 2016 WL 4051674, at *3–4 (Iowa Ct. App. July 27, 2016) (same).

Here, the procedural posture is remarkably similar to that in *Wende v. Orv Rocker Ford Lincoln Mercury, Inc.*  *See* 530 N.W.2d at 94.  In *Wende*, the defendants also sought to dismiss this pending case by filing a motion to enforce the settlement agreement.  *See id.*  There, as here, the defendants submitted the settlement correspondence between the attorneys as evidence in support of the motion.  *See id.*  And just as here, the plaintiff resisted with evidence that her

---

[3] While appellate courts have repeatedly reviewed rulings on motions to enforce settlement agreements, we have suggested that "the issue is most appropriately raised by first amending the pleadings to assert settlement as a claim in the lawsuit."  *Wende*, 530 N.W.2d at 94 n.1.  And the supreme court has declined to decide whether a motion to enforce is the correct procedure for presenting the issue to the district court when neither party "suggest[ed] that the issue was appropriately presented in a separate action or through the filing of additional pleadings to frame the issue."  *Wright*, 410 N.W.2d at 248–49.  Since the Recios have likewise never argued that the issue could not be considered in this case or without an amended pleading, we similarly do not consider those questions.

attorney lacked authority. *See id.* And the motion "was submitted to the court for resolution without objection." *Id.* at 95. Indeed, the *Wende* plaintiff—same as the Recios—"did not argue in her resistance to the motion that a factual dispute precluded the court from resolving the motion, nor did she request the issue be submitted to a jury." *Id.* Rather, she too argued "that the facts did not give rise to an enforceable agreement and asked the court to deny the motion." *Id.* And there, as here, the district court ultimately sided with the defendants finding that the attorney had the authority to settle and the settlement agreement was enforceable. *See id.* at 94.

When the *Wende* plaintiff argued on appeal for the first time that "a jury question was raised over [her attorney's] authority to settle the case," we thus held that "she failed to preserve any claim of error involving the procedure followed by the trial court" because she "did not object to the submission of [the] motion to the court as the finder of fact." *Id.* at 94–95. So too here. The district court acted as the fact finder, resolving the parties' dispute over whether Palma had authority to enter into the settlement agreement. By acquiescing to that procedure in the district court, the Recios failed to preserve error on any claim that the court should have treated the motion as one for summary judgment and left resolution of fact disputes for the jury. *See id.* at 95. Holding otherwise would be unfair—letting the Recios lie in wait to see if the court agreed with them only to try to change the rules of the game on appeal if unsuccessful. Our error-preservation requirement exists, among other reasons, to prevent such "sandbagging." *State v. Crawford*, 972 N.W.2d 189, 199 (Iowa 2022).

And so, we cannot consider whether the district court should have treated Fridley's motion to enforce settlement as a summary-judgment motion and denied it because a material fact dispute existed about Palma's authority to settle this case. Our review is limited to the issue decided—that Palma had that authority.

### III.   Sufficiency of the Evidence for the District Court's Finding

Because the district court decided the factual dispute over enforcement of the settlement agreement, we review its decision for correction of errors at law. *See Wende*, 530 N.W.2d at 95. The court's decision "has the effect of a jury verdict." *Cunningham*, 55 N.W.2d at 554. So its findings "are binding if supported by substantial evidence." *Wende*, 530 N.W.2d at 95. "Evidence is substantial or sufficient when a reasonable mind could accept it as adequate to reach the same findings." *Strong v. Rothamel*, 523 N.W.2d 597, 600 (Iowa Ct. App. 1994). We view the evidence in the light most favorable to the findings and ask only "whether substantial evidence supports the finding actually made by the trial court, not whether substantial evidence would have supported a different finding." *Van Oort Constr. Co. v. Nuckoll's Concrete Serv., Inc.*, 599 N.W.2d 684, 691 (Iowa 1999).

The Recios argue that Fridley failed to "present any evidence to support any assertion of affirmative acceptance of the offer of settlement by Mr. Recio directly, nor any evidence to show Mr. Recio provided affirmative authority for such offer."[4] And they critique the district court's reliance on the email exchanges between

---

[4] Technically, all of the Recios' arguments on appeal are framed as reasons the court should have denied summary judgment. But as we have already rejected the premise that the court made a summary-judgment ruling, out of an abundance of caution, we elect to interpret this part of their argument as essentially challenging the sufficiency of the evidence for the court's findings.

Palma and the claims examiner for its findings, claiming that its reasoning was "based on presumptions" about attorneys acting with their clients' authority that the Recios contend should not be used to "determine Mr. Recio's attorney acted with his authority."

But under our deferential review of the district court's factual findings, we have little difficulty holding that substantial evidence supports the finding that Palma had authority to settle the case. The admitted exhibits showing the written settlement negotiations support a finding that Palma did reach a settlement agreement with the claims examiner. And contrary to the Recios argument, the district court thus properly presumed that Palma was acting with his client's authority. Under Iowa law, "[a]n attorney is presumed to act with authority" to settle a case for a client. *Gilbride*, 620 N.W.2d at 251. That presumption can be rebutted "only by clear and satisfactory proof." *Id.*; *cf. Lonning v. Lonning*, 199 N.W.2d 60, 62–63 (Iowa 1972) (considering whether presumption of authority to appear for a party was rebutted by clear and satisfactory proof). But if it is not, then a settlement made by the attorney "is binding on the client." *Gilbride*, 620 N.W.2d at 251; *see also Kinzenbaw*, 2016 WL 4051674, at *3–4 (affirming district court's finding that client failed to rebut presumption of authority to settle case as supported by substantial evidence).

True, the Recios presented the affidavit of Oscar Recio and later email exchanges between the claims examiner and their new attorney in an attempt to rebut the presumption of authority. But the district court was not required to believe the affidavit. Nor was it required to find the claims examiner's emails ten months later—after being informed the Recios were not recognizing the settlement—had

any legal effect on whether Palma in fact had authority. Given the references in Palma's emails to talking with his client, the seriousness of the ethical breach if Palma had been lying and acting without authority, and the absence of any corroborating evidence from Palma or otherwise, a reasonable mind could conclude that this evidence was not clear and satisfactory proof to rebut the presumption of attorney authority. And the district court so found. We need not consider whether this evidence could have supported the contrary finding because that is not the question we ask in substantial-evidence review. *See Van Oort Constr. Co.*, 599 N.W.2d at 691.

We thus affirm the district court's finding that Palma had authority to settle the case when he reached an agreement to do so for $125,000. The district court did not err in enforcing the settlement agreement and ordering the suit to be dismissed upon the payment of that sum.

**AFFIRMED**.